**UPPER VALLEY ASSOCIATION FOR HANDICAPPED CITIZENS, and Winnie Pineo, Plaintiffs,**

v.

**BLUE MOUNTAIN UNION SCHOOL DISTRICT NO. 21, Board of District No. 21, Board of Directors, Blue Mountain Union School District No. 21, and Albert DePetrillo, Superintendent of the Blue Mountain Union School District No. 21, Defendants.**

No. 2:95–CV–207.

United States District Court, D. Vermont.

July 24, 1997.

Olcott Whitman Smith, Kochman & Smith, Burlington, VT, for Plaintiffs.

Elizabeth J. Grant, Paul, Frank & Collins, Inc., Burlington, VT, for Defendants.

## OPINION AND ORDER

SESSIONS, District Judge.

In this civil rights class action brought pursuant to 42 U.S.C. § 1983, Plaintiffs seek declaratory judgment declaring their right to costs, including reasonable attorneys' fees, incurred in a successful administrative action brought by Plaintiffs against Defendants under implementing regulations of the Individuals with Disabilities Education Act ("IDEA"), as well as an award of such costs. Plaintiffs allege that Defendants' failure to reimburse such costs constitutes a violation of their rights under the IDEA, 20 U.S.C. §§ 1401 et seq.; the Handicapped Children's Protection Act ("HCPA"), 20 U.S.C. § 1415(e); and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Pending before the Court are Plaintiffs' Motion for Partial Summary Judgment and Defendants' Cross–Motion for Summary Judgment.[1]

## I. BACKGROUND

The following facts are not in dispute.[2] Plaintiff Upper Valley Association for Handicapped Citizens ("the Association") is an unincorporated, non-profit association comprised of individuals with disabilities, family members, professionals and advocates, which provides informational, support, and advocacy services to individuals with disabilities and their families. Its principal place of business is in South Ryegate, Vermont. Plaintiff Winnie Pineo ("Pineo"), a resident of South Ryegate, serves as Program Director of the Association.

On March 22, 1993, 36 members of the Association wrote to Defendant Board of Directors of the Blue Mountain Union School District alleging numerous violations of the IDEA, including the failure to implement appropriate individualized education programs ("IEPs") for several specified students, as well as systemic inadequacies in the school district. In addition, they alleged violations of § 504 of the Rehabilitation Act of 1973 and Vermont special education regulations. Of the 36 signatories to the letter, 24 are parents of a child with a disability in Blue Mountain Union schools, one is a guardian of such a child, and the others are interested citizens.

Plaintiffs received no written response to their letter. On April 12, 1993, Plaintiff Pineo filed an administrative complaint with Vermont Commissioner of Education Richard Mills on behalf of the Association and the members who signed the March 22 letter. Commissioner Mills dismissed seven of the counts of the complaint as not appropriate for review by the commissioner complaint process. He appointed a three-person team ("Team") to investigate the remaining counts and to make recommendations to him.

On December 20, 1994, the Team issued a 45–page report documenting its findings and recommending corrective actions. The report confirmed many of the violations of the IDEA and related regulations that Plaintiffs had alleged. In addition to prescribing corrective actions, the report recommended that compensatory services be provided to six students. Commissioner Mills adopted the report, and issued an addendum expressing his

---

1. A hearing on the parties' motions was originally scheduled, but the Court subsequently concluded that the issues involved were sufficiently well-briefed to obviate the need for oral argument.

2. The Court has discussed the facts of this case previously in *Upper Valley Ass'n for Handicapped Citizens v. Mills*, 928 F.Supp. 429 (D.Vt.1996). That case involved a motion to dismiss, and thus the Court assumed the facts alleged in the Amended Complaint to be true. Because the present case involves cross-motions for summary judgment, the Court cannot rely upon the recitation of facts in the earlier case. The earlier case does, however, include a detailed discussion of the nature of Plaintiffs' administrative complaint against Defendants, and familiarity with the *Mills* opinion is presumed.

concern for the breadth and severity of the problems at Blue Mountain Union schools and ordering further monitoring of the District.

Plaintiffs filed this action on June 29, 1995 seeking reimbursement of costs, including reasonable attorneys' fees, that they expended in the course of the administrative complaint process. On July 11, 1996, this Court certified Plaintiffs as a class, pursuant to Fed.R.Civ.P. 23(c)(1). The class consists of all present and future members of the Association, and includes a subclass of the 36 members who filed the April 12, 1993 administrative complaint with Commissioner Mills. Plaintiff Pineo was designated as representative of both the class and the subclass.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when the Court finds that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party opposing summary judgment may not rest on its pleadings but must present "significant probative evidence" demonstrating that a genuine dispute of material fact exists, and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must view all materials submitted in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor. *Id.* at 255, 106 S.Ct. at 2513. The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those parts of the record which demonstrate absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552.

### B. The IDEA Statutory Framework

In 1975, Congress enacted the Education of the Handicapped Act ("EHA") to ensure that the states provide all disabled children with "a free appropriate public education."

20 U.S.C. § 1400(c). This legislation was enacted in recognition of the fact that a majority of disabled children in the United States "were either totally excluded from schools or [were] sitting idly in regular classrooms awaiting the time when they were old enough to 'drop out.'" H.R.Rep. No. 94–332, 94th Cong., 1st Sess. at 2 (1975), 1975 U.S.C.C.A.N. 1425, 1426. Known today as the IDEA, *see* Education of the Handicapped Act Amendments of 1990, Pub.L. No. 101–476, § 901(a)(1), 104 Stat. 1103, 1141–42 (1990) (revising short title), the statute conditions the granting of federal funds to the states for use in special education programs on the states' compliance with elaborate procedural requirements set forth in the Act. 20 U.S.C. §§ 1412, 1413; *Mrs. W. v. Tirozzi,* 832 F.2d 748, 751 (2d Cir.1987).

The IDEA establishes two administrative mechanisms for enforcement of the Act's procedural requirements. First, a parent or guardian of a disabled child may present complaints "with respect to any matter relating to the identification, evaluation, or educational placement of the child." 20 U.S.C. § 1415(b)(1)(E). Upon the filing of a complaint, the complainant is entitled to an impartial due process hearing conducted by the state or local educational agency. *Id.* § 1415(b)(2). If the due process hearing is conducted by a local educational agency, the agency's findings and decision may be appealed to the state educational agency, which is required to make an independent review and render a final decision within 30 days. *Id.* § 1415(c); 34 C.F.R. § 300.512(b)(1) (1997). Parties to a due process proceeding are entitled to a panoply of hearing rights, including the right to be accompanied and advised by counsel and experts; to present evidence and confront, cross-examine and compel attendance of witnesses; to prohibit the introduction of evidence that has not been disclosed at least five days prior; to obtain a record of the hearing; and to obtain written findings of fact and decisions. 20 U.S.C. § 1415(d); 34 C.F.R. § 300.508. An aggrieved party may appeal a state's decision by filing a civil action in state or federal court. 20 U.S.C. § 1415(e).

The second procedural safeguard available under the IDEA is known as the complaint resolution procedure ("CRP").[3] Implementing regulations of the IDEA require that states adopt written procedures for the receipt and resolution of complaints, from organizations or individuals, that a state or local educational agency has violated the IDEA or its regulations. 34 C.F.R. §§ 300.660, 300.662. The regulations further require that a state's CRP include a 60–day limit in which to investigate and resolve a complaint. *Id.* § 300.661(a). The state educational agency must conduct an independent investigation if it deems such an investigation necessary, and the complainant has the opportunity to submit additional information. *Id.* § 300.661(a)(1)–(2). However, the complainant does not have rights of confrontation, crossexamination, or compulsory process. Both the complainant and the public agency have the right to request a review of the state agency's decision by the United States Secretary of Education. *Id.* § 300.661(d). Although the IDEA provides no direct route of appeal from the Secretary's decision, it may be challenged through a separate § 1983 action. *See* 20 U.S.C. § 1415(f); *see generally Tirozzi,* 832 F.2d at 754–55.

It is the CRP process, known in Vermont as a commissioner complaint, that Plaintiffs initiated when they filed their April 12, 1993 complaint with the Vermont Commissioner of Education. Vermont's CRP provides that complaints are to be submitted to the Commissioner of Education, who must then appoint a complaint investigator to investigate the allegations made. Vermont State Board of Education Regulations § 2364.3.7 (1992). The complaint investigator is authorized to conduct meetings, hearings, and on-site investigations, and must present his or her findings to the Commissioner within 50 days of the Commissioner's receipt of the complaint. *Id.* The Commissioner then has ten

days in which to render a decision and order. *Id.* The regulations also allow an aggrieved party to appeal the Commissioner's decision to the United States Department of Education. *Id.*

### C. The Handicapped Children Protection Act

It is today well-settled that the IDEA provides a private right of action for enforcement of the substantive rights created by the statute. *See Tirozzi,* 832 F.2d at 751. However, prior to 1986, no private right of action had been found. Indeed in *Smith v. Robinson,* 468 U.S. 992, 1013, 104 S.Ct. 3457, 3469, 82 L.Ed.2d 746 (1984), the Supreme Court held that the EHA was the "exclusive avenue" through which disabled children and their parents could assert an EHA, a § 504, or an equal protection claim to a publicly financed education. The Court concluded that the EHA was such a comprehensive, carefully tailored legislative scheme that Congress intended to restrict disabled children and their parents seeking enforcement of their substantive public education rights under the EHA to the administrative remedies provided in the Act. 468 U.S. at 1009–13, 104 S.Ct. at 3466–69. Because the EHA did not provide for the recovery of attorneys' fees, the Court reasoned, Congress' intent would be circumvented if recourse to 42 U.S.C. § 1983 or § 504 of the Rehabilitation Act of 1973 were allowed. *Id.* at 1012, 104 S.Ct. at 3468.

Congress responded to the *Smith* decision "swiftly, decisively, and with uncharacteristic clarity to correct what it viewed as a judicial misinterpretation of its intent." *Fontenot v. Louisiana Bd. of Elementary and Secondary Educ.,* 805 F.2d 1222, 1223 (5th Cir.1986); *see also Tirozzi,* 832 F.2d at 755. As part of the Handicapped Children's Protection Act of 1986 ("HCPA"), Congress added § 1415(f) to

---

3. CRP was in the past referred to as the EDGAR complaint process because predecessor regulations setting out the process, 34 C.F.R. §§ 76.1–76.902 (1986), were known as the Education Division General Administrative Regulations ("EDGAR"). The complaint procedures were removed from EDGAR and added to the IDEA Part B regulations at 34 C.F.R. §§ 300.670–300.672 on July 8, 1992. 57 Fed.Reg. 30,328 (1992). On

September 29, 1992, the Department of Education issued final Part B regulations, in which the state complaint procedures were modified on the basis of comments received on the August 19, 1991 Notice of Proposed Rulemaking, and were renumbered as § 300.660–300.662. 57 Fed.Reg. 44,794 (1992). *See OSEP Memorandum 94–16,* [July 28, 1994] 21 IDELR (LRP) 85, 87 n. 1 (March 22, 1994) (Paper No. 41, App. A).

the EHA, which provides that the EHA is not the exclusive avenue for redress available to disabled children. Pub.L. No. 99–372, 1986 U.S.C.C.A.N. (100 Stat.) 796; 20 U.S.C. § 1415(f). In addition, the HCPA amended § 615(e)(4) of the EHA, 20 U.S.C. § 1415(e)(4)(B). That section provides in pertinent part:

> In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party.

20 U.S.C. § 1415(e)(4)(B).

### D. Applicability of § 1415(e)(4)(B) to the CRP Process

■ The thrust of Plaintiffs' argument in their motion for partial summary judgment is that a CRP constitutes an "action or proceeding" under § 1415(e)(4)(B), and that as prevailing parties, they are entitled to attorneys' fees. This appears to be an issue of first impression.

It is well-settled that an IDEA *due process* hearing is an "action or proceeding" under § 1415(e)(4)(B), and that the HCPA therefore authorizes the award of attorneys' fees to parents who prevail in such hearings, even if the due process hearing resolves the complaints made by a parent or guardian and no judicial proceeding on the merits ensues. *Brown v. Griggsville Community Unit Sch. Dist. No. 4,* 12 F.3d 681, 683–84 (7th Cir. 1993); *Moore v. District of Columbia,* 907 F.2d 165 (D.C.Cir.) (en banc), *cert. denied,* 498 U.S. 998, 111 S.Ct. 556, 112 L.Ed.2d 563 (1990); *McSomebodies v. Burlingame Elementary Sch.,* 897 F.2d 974 (9th Cir.1989) (as supplemented Mar. 2, 1990); *Mitten v. Muscogee County Sch. Dist.,* 877 F.2d 932 (11th Cir.1989), *cert. denied,* 493 U.S. 1072, 110 S.Ct. 1117, 107 L.Ed.2d 1024 (1990); *Duane .M. v. Orleans Parish Sch. Bd.,* 861 F.2d 115 (5th Cir.1988); *Eggers v. Bullitt County Sch. Dist.,* 854 F.2d 892, 898 (6th Cir.1988). *See also Combs v. School Bd. of Rockingham County,* 15 F.3d 357, 359 n. 10 (4th Cir.1994) (dictum); *Counsel v. Dow,* 849 F.2d 731 (2d Cir.) (dictum) (discussed below), *cert. denied,* 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380

(1988); *Arons v. New Jersey State Bd. of Educ.,* 842 F.2d 58, 62 (3d Cir.)(dictum), *cert. denied,* 488 U.S. 942, 109 S.Ct. 366, 102 L.Ed.2d 356 (1988); *J.B. v. Essex–Caledonia Supervisory Union,* 943 F.Supp. 387 (D.Vt. 1996); *but see Payne v. Board of Educ., Cleveland City Sch.,* 88 F.3d 392, 396 (6th Cir.1996) (expressing frustration with the "'semantic strain' involved in interpreting Section § 1415(e)(4)(B) as encompassing legal services provided at the administrative level regardless of whether the merits of a claim were reached or a subsequent judicial proceeding was had"). In reaching this conclusion, courts have had to reconcile § 1415(e)(4)(B) with the Supreme Court's holding in *North Carolina Dept. of Transp. v. Crest St. Community Council, Inc.,* 479 U.S. 6, 107 S.Ct. 336, 93 L.Ed.2d 188 (1986).

In *Crest Street,* the Supreme Court addressed the question "whether attorney's fees under [42 U.S.C.] § 1988 can be sought in a court action *other than* litigation in which a party seeks to enforce the civil rights laws listed in 1988." *Crest St.,* 479 U.S. at 12, 107 S.Ct. at 340. Section 1988 provides that *"[i]n any action or proceeding to enforce* a provision 'of" certain specified civil rights laws, including Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *"the court"* may award attorneys fees to the prevailing party. 42 U.S.C. § 1988 (emphasis added). The plaintiffs in *Crest Street* had filed a complaint with the Department of Transportation ("DOT"), pursuant to DOT regulations, alleging that a proposed highway extension through a predominantly black neighborhood violated Title VI. Having prevailed in the administrative proceeding, plaintiffs then filed a § 1988 action in federal court seeking recovery of their attorneys' fees. The Supreme Court held that the language and legislative history of § 1988 indicate that attorneys' fees could only be recovered in an action to enforce the civil rights laws enumerated in the section, and that § 1988 did not authorize a separate action solely for the recovery of attorneys' fees.

Despite the similarity of the "action or proceeding" language in § 1415, the HCPA has repeatedly been distinguished from the *Crest Street* interpretation of § 1988. The

Fifth Circuit, for example, has noted that § 1415 refers to potential restrictions on attorneys' fees for work done in administrative proceedings. *Duane M.*, 861 F.2d at 119 (discussing § 1415(e)(4)(D)). Moreover, the legislative history of § 1415 demonstrates Congress' clear intent to authorize attorneys' fees for parties prevailing in IDEA administrative hearings, even where the subsequent federal action is brought solely to recover such fees. *Id.* at 119 (citing House and Senate committee reports, statements of members of Congress, and the Joint Explanatory Statement of the Conference Committee); *Eggers*, 854 F.2d at 895–96. The vast majority of district courts which have addressed the issue have reached the same conclusion.[4] Thus, the courts have concluded that the terms "action" and "proceeding" are used in the statute "to distinguish between administrative and judicial phases of [IDEA] litigation." *Moore*, 907 F.2d at 168.

The Second Circuit has not squarely addressed the issue, but it has, in dictum, acknowledged the availability of attorneys' fees under the HCPA for work done in administrative proceedings not part of a subsequent lawsuit, despite the *Crest Street* case. *Counsel*, 849 F.2d at 740. The Second Circuit's reasoning, based on the language and legislative history of the statute, mirrors that of the line of authority discussed above. The court stated:

> [T]he *Crest Street* court concluded that "[t]he legislative history [of § 1988] clearly envisions that attorney's fees would be awarded for proceedings only when those proceedings are part of or followed by a lawsuit," 479 U.S. at 14, 107 S.Ct. at 341. Here, in contrast, the language and legislative history of the HCPA indicate that Congress did intend to make attorney's fees available under the EHA for work done in connection with administrative hearings which are not followed by litigation in court. In fact, the HCPA on its

face allows for attorney's fees "[i]n any action or *proceeding*," 20 U.S.C. § 1415(e)(4)(B) (emphasis added), and specifically refers to administrative proceedings in discussing the circumstances under which attorney's fees are available, 20 U.S.C. § 1415(e)(4)(D). These and other indications of congressional intent suggest, as all but one of the many courts which have considered this question have concluded, that *Crest Street* does not bar attorney's fees for work done in EHA administrative proceedings even where the subsequent federal court action is brought solely to recover attorney's fees.

*Counsel*, 849 F.2d at 740–41 n. 9 (citations omitted). In light of *Counsel* and the caselaw of other circuits discussed above, it is therefore abundantly clear to this Court that at least with respect to due process hearings, the HCPA allows the awarding of attorneys' fees for work done in IDEA administrative hearings, even when the only action in court is for the recovery of those fees.

In considering whether attorneys' fees are available for work done in the CRP as well, the Court necessarily starts with the statutory text. *See, e.g., United States v. Bass*, 404 U.S. 336, 339, 92 S.Ct. 515, 518, 30 L.Ed.2d 488 (1971). The Court concludes that construing the HCPA as allowing for the recovery of CRP attorneys' fees best comports with the language and structure of the HCPA and the IDEA. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole").

As previously noted, § 1415(e)(4)(B) allows for the recovery of attorneys' fees "in any action or proceeding brought under this subsection." The caselaw regarding due process hearings makes clear that the term "proceed-

---

**4.** *See Unified Sch. Dist. No. 259 v. Newton*, 673 F.Supp. 418, 422–23 (D.Kan.1987); *Prescott v. Palos Verdes Peninsula Unified Sch. Dist.*, 659 F.Supp. 921, 923–25 & n. 3 (C.D.Cal.1987); *Dodds v. Simpson*, 676 F.Supp. 1045, 1047 (D.Or.1987); *Kristi W. v. Graham Indep. Sch. Dist.*, 663 F.Supp. 86, 88 (N.D.Tex.1987); *School Bd. of Prince William County v. Malone*, 662

F.Supp. 999, 1001 (E.D.Va.1987); *Burpee v. Manchester Sch. Dist.*, 661 F.Supp. 731, 732–33 (D.N.H.1987); *but see Rollison v. Biggs*, 660 F.Supp. 875, 877 (D.Del.*1987) (Crest Street* bars HCPA attorneys' fee awards for administrative proceedings "[b]ecause Congress intended that the HCPA be construed consistent with other fee-shifting statutes...").

ing" refers to administrative proceedings under the IDEA. *Brown*, 12 F.3d at 683–84; *Moore*, 907 F.2d at 167–68. However, there is nothing in the language of the statute to indicate that due process hearings are the only type of administrative proceeding to which § 1415(e)(4)(B) refers. On the contrary, the language of § 1415(e)(4)(B)—"in any . . . proceeding" —is expansive, and without constraint in other sections of the HCPA or IDEA. Of particular note is § 1415(b), entitled "Required procedures; hearing," which states that "[t]he procedures required by this section shall include, but not be limited to" those specifically listed, including due process hearings. Thus, § 1415(b) sets out a non-exhaustive list of procedures to protect and enforce the rights of disabled children under the IDEA. The CRP is an additional such procedure under the IDEA, and the HCPA's reference to "any . . . proceeding" applies to it.

The case of *Beth V. by Yvonne V. v. Carroll*, 87 F.3d 80 (3d Cir.1996) is instructive on this point. There, the question before the court was whether the IDEA provided plaintiffs a private right of action to challenge the Pennsylvania Department of Education's failure to implement and maintain an effective CRP. In holding that it did, the court relied on the following language from § 1415:

**(b) Required procedures; hearing**

> (1) The procedures required by this section shall include, but not be limited to—
>
> . . .
>
> (E) an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.

20 U.S.C. § 1415(b)(1)(E). It went on to hold that to the extent that the plaintiffs' challenge to the CRP concerned "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," it was a complaint authorized by § 1415(b), for which the IDEA expressly provided a cause of action in state or federal court.[5] *Beth V.*, 87 F.3d at 86, 88.

Similarly, in the present case plaintiffs' CRP complaint was one "with respect to . . . matter[s] relating to the identification, evaluation, or educational placement" of particular children, and more generally the "provision of a free appropriate public education" to those children. The complaint was replete with allegations—many of which were confirmed by the Team—of the school district's violations of the IDEA and implementing regulations regarding the evaluation and placement of particular students, the development of IEPs for them, and the making of required accommodations for and the provision of necessary services to these students. *See* Team Report (Paper No. 1, App. A). Thus, just as § 1415(b)(1)(E) encompassed the complaint as to the adequacy of a state's CRP in *Beth V.*, so does it embrace the CRP itself in the present case. The CRP that reviewed Plaintiffs' complaint was therefore a proceeding brought under § 1415, for which subsection (e)(4)(B) authorizes the awarding of attorneys' fees.

This is not the first time that a court has held § 1415(e)(4)(B) to authorize attorneys' fees in administrative proceedings other than due process hearings. Several courts, for example, have held that attorneys' fees are available under the HCPA for work done in mediation. *See, e.g., E.M. v. Millville Bd. of Educ.*, 849 F.Supp. 312 (D.N.J.1994); *Masotti v. Tustin Unified Sch. Dist.*, 806 F.Supp. 221, 223, (C.D.Cal.1992); *K.A.L. v. Salem Bd. of Educ.*, 1994 WL 327160 at *4 (D.N.J. June 21, 1994); *see generally Juan R. v. San Ramon Valley Unified Sch. Dist.*, [August 8, 1996] 24 IDELR (LRP) 1, 2 (N.D.Cal.1995); *Manalo v. Mountain View Elementary Sch. Dist., Id.* at 4, 5–6 (N.D.Cal.1995); *see also*

---

**5.** Section § 1415(e)(2) provides:

(e) **Civil action; jurisdiction**

. . .

(2) *Any party aggrieved by the findings and decision made under subsection (b) of this section* who does not have the right to an appeal under subsection (c) of this section, and any party aggrieved by the findings and decision under subsection (c) of this section, *shall have the right to bring a civil action with respect to* the *complaint presented pursuant to this section*

. . . .

20 U.S.C. § 1415(e)(2) (emphasis added).

*E.W. ex rel. B.W. v. Millville Bd. of Educ.,* [May 15, 1997] 25 IDELR (LRP) 809, 810 (D.N.J.1997). In *Millville,* the court held that attorneys' fees are available for mediation work even in the absence of plaintiffs' request for an administrative hearing. 849 F.Supp. at 315. Interestingly, mediation is prescribed by neither the IDEA nor specific regulations. Rather, a note to the regulations governing due process hearings merely allows states to suggest mediation, so long as it is not used "to deny or delay a parent's rights" to a due process hearing. 34 C.F.R. § 300.506 n.

As a matter of public policy, disallowing the recovery of attorneys' fees for work done in CRPs would discourage settlement of IDEA claims. In certain circumstances, a complainant may pursue a CRP complaint in a 42 U.S.C. § 1983 action in state or federal court. *See* 20 U.S.C. 1415(f).[6] Because § 1983 authorizes the awarding of attorneys' fees, the denial of attorneys' fees for CRP work would provide incentive for complainants to take their claims to court rather than accept an amicable settlement in the CRP process. As Judge Posner has stated in the context of IDEA due process hearings, "If the claimant must get his claim before a district judge in order to be entitled to attorney's fees, claimants' lawyers will be reluctant to settle cases at the earlier, nonjudicial stages." *Brown,* 12 F.3d at 684.

Finally, the Court's holding in this case comports with the enforcement policy underlying the IDEA. As this Court has previously stated:

> [I]n the case of IDEA, Congressional policy favors the protection of the educational rights of the handicapped.... Attorneys play the key role in today's complex society in the protection of the civil rights of individuals and groups. Enforcement of

IDEA is totally dependent upon the vigorous advocacy for persons and groups who are least able to afford such representation. It is in recognition of that simple truth that Congress enacted the fee-shifting statutory scheme found in 20 U.S.C. § 1415(e)(4).

*J.B. v. Essex–Caledonia Supervisory Union,* 943 F.Supp. at 391.

Based on the foregoing analysis, the Court concludes that attorneys' fees are available under § 1415(e)(4)(B) for work done in CRPs.

### E. Plaintiffs as Prevailing Parties

Defendants have not challenged Plaintiffs' assertion that they were the prevailing party in the CRP. However, they do contend that some or all of Plaintiffs are ineligible for attorneys' fees because they are not "parents or guardians" of children with disabilities.

Section 1415(e)(4)(B) authorizes courts to award attorneys' fees to the "parents or guardian of a child or youth with a disability who is the prevailing party." Because neither the class representative Ms. Pineo, nor all members of the class are parents or guardians of children with disabilities, the entire class is not entitled to attorneys' fees. However, the Court grants the 24 parents and one guardian who are members of the subclass 30 days' leave to move to intervene as named plaintiffs, to be designated a subclass of the existing class, and for one or more of the intervenors to be designated a representative of a newly created subclass. This newly created subclass of 25 shall be entitled to attorneys' fees for work done in the CRP.

### III. CONCLUSION

Based on the foregoing analysis, Plaintiffs' Motion for Partial Summary Judgment (Pa-

---

**6.** 20 U.S.C. § 1415(f) generally requires exhaustion of due process hearing remedies before a civil action may be filed in court to enforce rights under the IDEA. However, there are exceptions to this rule. "Congress specified the situations in which prior to filing suit, exhaustion of the due process and review procedures set forth in § 1415(b)(2) and (c) is not a prerequisite.... These situations include complaints that:

(1) it would be futile to use the due process procedures ...; (2) an agency has adopted a

policy or pursued a practice of general applicability that is contrary to the law; (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks authority to grant the relief sought)....

[H.R. Rep. No. 296, 99th Cong., 1st Sess. 4, 7 (1985).]" *Tirozzi,* 832 F.2d at 756. *See also Mills,* 928 F.Supp. at 434–35.

per No. 30) is hereby GRANTED in part and DENIED in part, and Defendants' Motion for Summary Judgment (Paper No. 33) is DENIED. Plaintiffs are granted 30 days' leave in which the parents and guardian of the subclass may move to intervene, to be designated a subclass, and to have one or more intervenors designated as representatives of the new subclass.