MEGAN C. and Rebecca C.
Plaintiffs/Petitioners,

v.

INDEPENDENT SCHOOL DISTRICT NO. 625, Saint Paul, Minnesota, Saint Paul Board of Education, and Curman Gaines, Superintendent, in his representative capacity. Defendants/Respondents.

No. CIV 98–1289 (MJD/AJB).

United States District Court,
D. Minnesota.

March 29, 1999.

Margaret O'Sullivan Kane, Kane Law Office, St. Paul, MN, for Plaintiffs.

Nancy L. Cameron, Assistant General Counsel, St. Paul, MN, for Defendants.

## MEMORANDUM AND ORDER

DAVIS, District Judge.

On May 4, 1998 Plaintiffs Megan C., a disabled student, and Rebecca C., Megan C.'s mother, brought an action for attorneys' fees and costs against Independent School District No. 625 ("District"), the Saint Paul Board of Education, and Curman Gaines, Superintendent, in the amount of $5,137.50 for the services of Margaret O'Sullivan Kane and $13,980.91 for the services of James Mortenson. Plaintiffs' action is based on the Individuals with Disabilities in Education Act, ("IDEA"), 20 U.S.C. § 1415(i)(3). Defendants argue that Plaintiffs are not entitled to attorneys' fees and costs and move for summary judgment pursuant to Fed. R.Civ.P. 56.

## BACKGROUND

On July 9, 1996, Plaintiffs' attorney, James Mortenson, sent a demand letter to the District seeking, in relevant part, the following: (1) four years of compensatory education for denial of free, appropriate public education ("FAPE") since at least the fall of 1992; (2) reimbursement for travel to and from school and extracurricular activities prior to April 1994; and (3) damages as a result of intentional discrimination in the amount of $57,600. ISD No. 625 Ex. 3.

On September 26, 1996, Mortenson filed a complaint pursuant to 34 C.F.R. § 300.662 with the Minnesota Department of Children, Families and Learning (MDCFL), and on October 2, 1996, the MDCFL sent a letter of complaint to the District setting forth the allegations made by Mortenson that:

(1) the District failed to identify Megan C. as a student with a disability in a timely manner;

(2) the District failed to assess Megan C.'s secondary transition needs and did not invite Megan C. to the Individualized Education Plan ("IEP") meeting in order to conduct a proper IEP meeting in June 1994

(3) the District failed to conduct an IEP meeting, develop an IEP, and provide written notice of the proposed District placement prior to the placement of Megan C. at New Heights charter school;

(4) the District failed to conduct a periodic review of the June 1994 IEP;

(5) the District failed to have an IEP in place for Megan C. at the beginning of the (a) 1995–96 school year or (b) the 1996–97 school year;

(6) the District failed to conduct an appropriate IEP meeting to develop an IEP in the fall of 1995;

(7) the District failed to provide the IEP for the 1995–96 school year to Megan C. and her mother in a timely manner and services were not timely implemented after the IEP meeting;

(8) the District failed to designate an IEP team composed of all required team members to develop an IEP for the 1996–97 school year;

(9) the District failed to provide transportation to allow Megan C. to have an equal opportunity to participate in non-academic and extracurricular activities from 1992 to the present.

ISD No. 625 Ex. 11; *see also,* Pl.Ex. 1. On October 16, 1996, the District responded to Plaintiffs' complaint, and on December 23, 1996, the MDCFL issued findings of fact, conclusions of law, and orders as appropriate, to which both parties subsequently responded. While the parties' responses were before the MDCFL, the IEP team met on January 23, 1997 and drafted a proposed IEP that was ultimately accepted by Megan C. on March 16, 1997. ISD No. 625 Ex. 13.

On March 14, 1997, after considering the responses received from both parties to its December 23, 1996 decision, the MDCFL issued its final decision regarding the October 2, 1996 complaint. The final MDCFL decision found violations of law with respect to allegations (1), (2), (5a), (6), (7), and (8) and found no violations with respect to allegations (3), (4), (5b) and (9) set forth above. Pl.Ex. 6. Specifically, the March 14, 1997 decision found that: (1) the District was in violation for failing to initiate due process procedures to conduct an assessment of Megan C. within a reasonable time period; (2) the District was in violation for failing to provide comprehensive transition assessment data and failing to inform Megan C. and her mother that transition was to be discussed at the June 1994 IEP meeting; (3) the District was not in violation for failing to develop an IEP for use while Megan was at a charter school because Megan C.'s mother withdrew Megan C. from the District and enrolled her in the charter school, and the development of the new IEP was thus the responsibility of the charter school rather than the District; (4) the District was not in violation for failing to conduct the

scheduled periodic review of the June 1994 IEP because Megan C. was not enrolled in the district at the time of said review, and the District was therefore not required to conduct the review; (5a) the District was in violation for failing to have a current IEP for the 1995–96 school year; (5b) the District was not in violation for not having a current IEP at the beginning of the 1996–97 school year; (6) the District was in violation for failing to include all of the required team members to develop the November 1995 IEP; (7) the District was in violation for delaying the implementation of the IEP for the 1995–96 school year and failing to specify the amount of service Megan C. was to receive; (8) the District was in violation for failing to include a representative of the general education program on the IEP teams from March 1996 to September 1996 and should consider inviting special needs and vocational rehabilitation counselors to become IEP team members and should plan and establish wrap-around services as part of Megan C.'s transition to community college; and (9) the District was not in violation for failing to provide transportation to on-the-job-training because it does not provide such transportation to any students and such transportation is not identified as a related service on any of Megan C.'s IEPs. Pl.Ex. 6.

In conjunction with the above findings, the March 14, 1997 MDCFL decision ordered that: (1) the District consult with Megan C. and her mother to select immediately outside, comprehensive, independent, qualified personnel who have expertise in the area of Megan C.'s disability to conduct an assessment, by April 15, 1997, conditional upon the cooperation of Megan C. and her mother, addressing the following areas: social, emotional, academic, intellectual, medical, and transition; (2) the District reconvene the IEP team by May 5, 1997 to consider the assessment data and develop a current IEP based on said data and consider the need for additional special education services to compensate

for missed services. Pl.Ex. 6. In its order, the MDCFL set forth that if the IEP team was unable to reach a consensus regarding the issue of compensatory education, the decision would be remanded to the MDCFL for a determination on the issue. *Id.*

Responding to the requirement that the District perform an independent assessment of Megan C., the District responded that:

[i]n the spring of 1996, long before the MDCFL was involved, the School District agreed to pay for independent assessments, including assessments in the following areas: academic, intellectual and social/emotional ... Megan is due for her three-year reassessment. Because of this fact, and the fact that the School District already agreed to pay for an independent assessment, the District has no objection to completing the independent assessment in the areas specified by the MDCFL, i.e.... social/emotional, medical and transition.

Pl.Ex. 5 at 7–8.

The above described independent assessment by the District took longer than expected, and the IEP was unable to reconvene to evaluate the assessment data until January 9, 1998. Although the IEP team was unable to reach a decision regarding compensatory education, the team drafted an IEP on January 23, 1998, which established that the District would provide: tutoring services to assist with written language, spelling and organizational skills; a computer and software to assist with written assignments; a lumbar back support cushion; individual counseling; ten speech and language therapy sessions at the Courage Center; and reimbursement to the community college for taped books, note taker services provided by the disabilities center, and transportation to and from school. ISD No. 625 Ex. 16. Plaintiffs refused the January 23, 1998 IEP.

Prior to the IEP team meeting of January 9, 1998, the District contacted Plaintiffs' counsel, Mortenson, regarding the claim for compensatory education, requesting in a letter of April 2, 1997 that he submit the areas in which he felt compensatory education was required, how many hours were required, and how such information was calculated. ISD No. 625 Ex. 14. Mortenson responded that, "[o]ne possible solution to assist Megan, and end the ongoing dispute over services, is to provide Megan with the funds to complete the equivalent of 4 years post secondary education and continue to assist with transition." ISD No. 625 Ex. 15. Mortenson calculated the corresponding cost breakdown as $4,649.28 for two years at community college, $7,182.00 for two years at a four year public college, and $4,500.00 as estimated costs for books and materials for a total amount of $16,331.28. *Id.* Subsequent to receipt of Mortenson's proposal, the District received no further proposals from Plaintiffs or Mortenson regarding compensatory education.

On March 5, 1998, however, Plaintiffs' substitute counsel, Margaret O'Sullivan Kane, submitted a memorandum to the MDCFL in support of Plaintiffs' request for compensatory education and services and reimbursement for services, requesting: payment for future college course work; reimbursement for transportation costs in the amount of $12,922.40; purchase of a laptop computer and printer; loan of Windows '95 and Windows '95 upgrade; reimbursement for tutoring in the amount of $163.00 and tutoring for ten to fifteen hours per week for one to two years; provision of a note taker; reimbursement for remedial books in the amount of $250.00 and payment for books in college at a cost of $500.00 per quarter; reimbursement for remedial classes in the amount of $720.00 and payment for future remedial classes as needed; counseling for one to two times per week for two years; and ten sessions of speech and language therapy at Courage Center. Pl.Ex. 9. The above proposal submitted by Kane was never provided to the District nor was the

District given an opportunity to respond to said proposal. Fernandez Aff. at ¶ 9.

On March 31, 1998, the MDCFL reached a determination regarding the provision of compensatory services and ordered the District to cover all costs incurred in the provision of:

(1) counseling services provided one time a week for two years;

(2) tutoring services for ten hours per week for two years;

(3) provision of a not taker for Megan C.'s college courses for two years; and

(4) continued use of a district-loaned computer and software for two years.

Pl.Ex. 10.

The March 31, 1998 MDCFL order further required that the District revise the January 23, 1998 EIP so that:

(1) goals are measurable and objective and provide annual statements of what Megan C. will be learning;

(2) objectives define intermediate instructional steps to reach the identified final goal;

(3) the transitional plan adequately describes Megan C.'s skills in the five transition areas and explains the decision that transition services are not needed in certain other identified areas.

Pl.Ex. 10. The District made the above described minor corrections ordered by the MDCFL in a subsequent IEP drafted on April 6, 1998 but again rejected by Megan C. Fernandez Aff. at ¶ 10. On May 4, 1998, Plaintiffs brought the present action for attorneys' fees and costs against Defendants in the amount of $19,118.41 based on the IDEA, 20 U.S.C. § 1415(i)(3).

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate if the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law.

Fed.R.Civ.P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Unigroup, Inc. v. O'Rourke Storage & Transfer Co.*, 980 F.2d 1217, 1219–20 (8th Cir. 1992); *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1315 (8th Cir.1996). The burden of demonstrating the absence of any genuine issue of material fact rests on the moving party. Fed. R.Civ.P. 56(b); *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. To defeat summary judgment when a properly supported motion for summary judgment is made, however, the non-moving party must go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505.

### II. The IDEA

The IDEA, 20 U.S.C. § 1400 *et. seq.* was passed by Congress to "assure that all children with disabilities have available to them . . . a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(c). To these ends, 20 U.S.C. § 1415(a) requires that:

[a]ny State educational agency [("SEA")], State agency, or local educational agency that receives assistance under this subchapter shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such agencies.

Two "separate, distinct, and independent remedies [are] available to children with disabilities and their parents to resolve issues of disagreement with local school districts" regarding the implementation of the requirements set forth in the IDEA: (1) the complaint resolution procedure ("CRP") and (2) the impartial due process

hearing system. 18 IDELR 589, Letter to Johnson (1991).; 21 IDELR 85, OSEP Memorandum 94–16 (1994). Implementing regulations for both remedies are currently set forth by the Department of Education Office of Special Education and Rehabilitative Services in Part 300 of the Code of Federal Regulations, "Assistance to States for the Education of Children with Disabilities."

### A. Impartial Due Process Hearing System

To enforce the procedural requirements set forth in the IDEA, the parent or guardian of a disabled child may present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). Upon filing the complaint, the parent or guardian is entitled to "an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency." 20 U.S.C. § 1415(f). Furthermore, if the impartial due process hearing is conducted by a local educational agency, "any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to the State education agency ... [which] shall conduct an impartial review of such decision." 20 U.S.C. § 1415(g). If such an appeal is unavailable or if a party is aggrieved by the findings and decision rendered pursuant to § 1415(g), the aggrieved party may file a state or federal civil action to appeal the findings and decision under § 1415(i)(2).

Parties to the impartial due process hearing or to an appeal of the findings and decision of such a hearing are entitled to a number of procedural rights and safeguards under § 1415, including: the right to be accompanied and advised by counsel; the right to present evidence and confront, cross-examine, and compel the attendance of witnesses; the right to prohibit the introduction of evidence not disclosed at least five business days prior to the hearing; the right to a written or electronic verbatim record of the hearing; the right to written findings of facts and decisions; and the right to an appeal as set forth above. 20 U.S.C. § 1415 (f, h, i(2)). Such due process protections are codified in the implementing regulations of the Department of Education Office of Special Education and Rehabilitative Services in Part 300, Subpart E of the Code of Federal Regulations, "Procedural Safeguards Due Process Procedures for Parents and Children," 34 C.F.R. §§ 300.508–300.513. The Regulations clearly state that the authority for 34 C.F.R. §§ 300.508–300.513 is provided by § 1415 of the IDEA.

### B. Complaint Resolution Procedures

The CRP, 34 C.F.R. §§ 300.660–300.662, provide that an SEA shall adopt written procedures for resolving any signed, written complaint filed by an organization or individual alleging that a public agency has violated the IDEA or the regulations of 34 C.F.R. §§ 300.660—300.662 and for informing parents and other interested individuals about the procedures in 34 C.F.R. §§ 300.660–300.662. Under the CRP, the minimum state complaint procedures require that within 60 calendar days, absent exceptional circumstances, an SEA receiving a complaint must: realize an independent on-site investigation with regard to the filed complaint if the SEA determines that such an investigation is necessary; give the complainant the opportunity to submit additional information regarding her allegations; review all relevant information and determine whether the public agency is violating the IDEA or the regulations in 34 C.F.R. §§ 300.660–300.662; issue a final written decision to the complainant addressing her allegations; and establish procedures for the effective implementation of such decision. 34 C.F.R. §§ 300.661(a-c). 34 C.F.R. §§ 300.660—

300.662 further provide that either party has the right to request the U.S. Secretary of Education for discretionary review of the SEA's final decision. 34 C.F.R. §§ 300.661(d).

The procedures currently known as the CRP and found in 34 C.F.R. §§ 300.660—300.662 were initially set forth in 45 C.F.R. § 121a.602, until April 3, 1980, at which time the complaint procedure requirement of 45 C.F.R. § 121a. 602 was revoked and the complaint procedure requirement of the Education Department General Administrative Regulations ("EDGAR") was substituted. *Laughlin v. School District No. 1, Multnomah County,* 69 Or.App. 63, 686 P.2d 385, 390 n. 7 (1984). The EDGAR procedures were first set forth in 45 C.F.R. § 100b.780 in 1980 and in 1983 were codified at 34 C.F.R. § 76.780–76.782. *Id.* The EDGAR procedures provided "an administrative mechanism for assuring that a state complies with state-administered federal programs, including the [IDEA] ... [but were] to be distinguished from the specific administrative complaint procedures detailed in the [IDEA] itself." *Christopher v. Portsmouth School Committee,* 877 F.2d 1089, 1090 n. 2 (1st Cir.1989). Amendments made to EDGAR on July 8, 1992 removed the state complaint procedures from EDGAR and added them to 34 C.F.R. Part 300, the implementing regulations for the IDEA. When the final IDEA implementing regulations were published on September 29, 1992, the state complaint procedures were renumbered as 34 C.F.R. §§ 300.660–300.662 and located at 34 C.F.R. § 300, Subpart F, "State Administration State Complaint Procedures," rather than Subpart E, " Procedural Safeguards Due Process Procedures for Parents and Children," where the implementing regulations for § 1415 due process procedures can be found. 21 IDELR 85, OSEP Memorandum 94–16 (1994).

C. Attorneys' Fees

20 U.S.C. § 1415(i)(3)(B) provides that "[i]n any *action or proceeding brought under this section,* the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." (emphasis added). The provision for recovery of attorneys' fees and costs is also set forth in 34 C.F.R. § 300.515 of the implementing regulations for IDEA § 1415.

■ It is well-settled that an IDEA impartial due process hearing initiated pursuant to 20 U.S.C. § 1415(f) and the corresponding implementing regulations 34 C.F.R. §§ 300.506–300.515 is an "action or proceeding" brought under § 1415 and that parents who prevail in such hearings are thus entitled to attorneys' fees "even if the due process hearing resolves the complaints made by a parent or guardian and no judicial proceeding on the merits ensues." *Upper Valley Association for Handicapped Citizens v. Blue Mountain Union School District No. 21,* 973 F.Supp. 429, 433 (D.Vt.1997) (citing *Griggsville Community Unit School District. No. 4,* 12 F.3d 681, 683–84 (7th Cir.1993); *Moore v. District of Columbia,* 907 F.2d 165 (D.C.Cir.1990); *McSomebodies v. Burlingame Elementary School,* 897 F.2d 974 (9th Cir.1989); *Mitten v. Muscogee County School District,* 877 F.2d 932 (11th Cir. 1989); *Duane M. v. Orleans Parish School Bd.,* 861 F.2d 115 (5th Cir.11988); *Eggers v. Bullitt County School District,* 854 F.2d 892 (6th Cir.1988)).

■ The issue before this Court, however, is whether a complaint initiated pursuant to the CRP constitutes an "action or proceeding" brought under 20 U.S.C. § 1415 for the purposes of 20 U.S.C. § 1415(i)(3)(B), therefore entitling a prevailing party to attorneys' fees and costs. Plaintiffs in the present case initiated a CRP pursuant to 34 C.F.R. § 300.662 and have brought the present action under the IDEA, 20 U.S.C. § 1415(i)(3), to recover the attorneys' fees and costs incurred during the CRP. Defendants argue that a complaint such as Plaintiffs filed pursuant

to 34 C.F.R. § 300.662 rather than 34 C.F.R. §§ 300.506–300.515 does not qualify as a complaint brought under 20 U.S.C. § 1415 and that therefore this Court lacks jurisdiction over Plaintiffs' claim for costs and attorneys' fees. This is issue has not been addressed by any Circuit.

### 1. Statutory Text

Attorneys' fees are normally not awarded to a prevailing party absent explicit statutory authority or "unusual circumstances." *Key Tronic Corporation v. U.S.*, 511 U.S. 809, 819, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994) (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 262, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)); *U.S. v. Mexico Feed and Seed Company, Inc.*, 980 F.2d 478, 490 (8th Cir.1992). Said "unusual circumstances" include bad faith, litigation involving a common fund, and litigation conferring a substantial benefit on an ascertainable group. *Johnson v. U.S. Department of Housing and Urban Development*, 939 F.2d 586 (8th Cir.1991) (citing *Alyeska Pipeline*, 421 U.S. at 247–70, 95 S.Ct. 1612). As neither party alleges "unusual circumstances" in the present case, this Court first looks to the relevant statutory text of the IDEA, 20 U.S.C. § 1415, as well as the Federal Regulations at issue to determine whether authority exists for the award of attorneys' fees to a prevailing party in the CRP, 34 C.F.R. § 300.660–300.662. *See, United States v. Bass*, 404 U.S. 336, 339, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

For the reasons set forth below, this Court finds that the statutory construction of 20 U.S.C. § 1415(i) supports a finding that, for the purposes of 20 U.S.C. § 1415(i)(3)(B), the language "any action or proceeding brought under this section" encompasses any complaint filed by a parent under § 1415(b)(6) and thereby entitled to: (1) the opportunity for an impar-

tial due process hearing under § 1415(f); (2) the opportunity to appeal to a SEA the findings and decision of such a hearing if initially rendered by a local agency under § 1415(g); (3) the opportunity under § 1415(i)(2) to file a civil action to appeal the findings and decision made under § 1415(f) if an appeal under § 1415(g) is unavailable or to appeal the findings and decision rendered under § 1415(g); (4) the opportunity under § 1415(e) to resolve a dispute involving any matter described in § 1415(b)(6) through a mediation process, which, "at a minimum shall be available whenever a hearing is requested under subsection (f) or (k) of this section."[1] As discussed, the implementing regulations for such procedures are found in 34 C.F.R. §§ 300.506–300.515 rather than 34 C.F.R. § 300.660–300.662–the regulations establishing the CRP.

Support for this conclusion lies in § 1415(i), entitled "administrative procedures," and setting forth in § 1415(i)(1) the IDEA procedures for the resolution of a § 1415(b)(6) complaint: (1) a hearing conducted pursuant to § 1415(f) or § 1415(k); (2) the appeal of the findings and decision rendered at such a hearing under § 1415(g); (3) and an appeal of such findings and decision reached through a hearing conducted pursuant to § 1415(f), (k), or (g) through a civil action under § 1415(i)(2). Subsequent to discussion of said procedures, § 1415(i)(3) provides for the award of attorneys' fees and costs for the prevailing party in "any action or proceeding brought under this section." The immediate proximity of the IDEA's discussion of said procedures to the exclusion of others, specifically the CRP, to the IDEA's provision for recovery of attorneys' fees and costs supports the conclusion that the language "any action or proceeding brought under this section" is exclusively limited to the procedures explicitly enumerated therein.

---

1. 20 U.S.C. § 1415(k) is not relevant to the present proceedings, as it establishes procedures for the placement of a child with a disability in an "alternative educational setting."

In *Upper Valley*, however, the court concluded that to construe the IDEA as allowing for the recovery of CRP attorneys' fees "best comports with the language and structure" of the IDEA, as there is "nothing in the language of the statute to indicate that due process hearings are the only type of administrative proceeding" to which 20 U.S.C. § 1415(i)(3) applies. *Id.* at 434. In support of its conclusion, the court found that:

> [o]f particular note is § 1415(b), entitled "Required procedures; hearing," which states that "[t]he procedures required by this section shall include, *but not be limited to*" those specifically listed, including due process hearings. Thus, § 1415(b) sets out a non-exhaustive list of procedures to protect and enforce the rights of disabled children under the IDEA. The CRP is an additional such procedures under the IDEA.

*Id.* at 435 (emphasis added). Similarly, *Upper Valley* relies on the holding of *Beth V. v. Carroll*, 87 F.3d 80 (3d Cir.1996), which found that a complaint alleging that a SEA failed to implement an effective CRP was filed under § 1415(b)(6) as it related to "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate education to such child." In so holding, *Beth V.* also relied on the language of § 1415(b)(1) setting forth that "[t]he procedures required by this section shall include, but shall not be limited to" those enumerated below. The court found that such language indicated that the procedures specified in § 1415(b) were not exclusive procedures and instead encompassed the CRP. *Beth V.*, 87 F.3d at 82.[2]

Subsequent to the ruling in *Beth V.* and the filing of the *Upper Valley* lawsuit, 20 U.S.C. § 1415 was amended by Pub.L. 105–17, effective June 4, 1997, renumbering § 1415 and significantly altering the relevant language cited by *Upper Valley* and *Beth V.* Pub.L. 105–17 eliminated from 20 U.S.C. § 1415(b) the expansive language—"but not be limited to," resulting in a provision that instead reads, "[t]he procedures required by this section shall include."

Thus, the argument set forth in both *Beth V.* and *Upper Valley* that the list of procedures set forth in § 1415 is non-exhaustive and can thus expand to include the CRP is rendered moot by the 1997 amendments and thus inapplicable to the present matter. To the contrary, the

2. In reaching its conclusion, *Beth V.* holds that "the procedural safeguards undergirding the IDEA scheme lie at the core of [§ 1415(i)(2)] and its authorization of suit." *Beth V.*, 87 F.3d at 86. In so finding, however, *Beth V.* relies on cases from the First, Third, Second, and Ninth Circuits which address the right to appeal findings and decisions rendered pursuant to an impartial due process administrative hearing under § 1415 or failure by a state to implement procedures for such a hearing. *Murphy v. Timberlane Regional School District*, 22 F.3d 1186, 1191 (1st Cir.1994) (noting that this case concerns the initiation of a request for an "impartial due process" administrative hearing under 20 U.S.C. § 1415(b)(2)); *Christopher W. v. Portsmouth School Committee*, 877 F.2d 1089, 1099 (1st Cir.1989) (finding that "[t]he [IDEA] embodies a clear comprehensive scheme of procedural safeguards which are to be followed for any alleged violations of the statute" and that as administrative remedies must be exhausted before recourse to district court is permitted, plaintiff must exhaust the administrative remedies set forth in § 1415 before initiating action in district court); *W.G. v. Board of Trustees*, 960 F.2d 1479 (9th Cir.1992) (finding that the district court had jurisdiction to review the decision of a state "administrative hearing officer" under § 1415(e)(2)); *Mrs. C. v. Wheaton*, 916 F.2d 69, 71–72 (2d Cir.1990) (finding that any party, such as plaintiff, aggrieved by the findings and decision of an impartial due process state administrative hearing may bring an action in state or federal court under § 1415(e)(2)); *Muth v. Central Bucks School District*, 839 F.2d 113 (3d Cir.1988) (addressing whether the state's statutory scheme to provide parents of disabled children with due process meets the due process requirements set forth in § 1415), *rev'd on other grounds; Board of Education of the Hendrick Hudson Central School District, Westchester County v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) (addressing respondents' appeal from the district court's review of findings and decision rendered pursuant to a due process administrative proceeding under § 1415).

present language of § 1415(b) indicates that the procedures set forth in § 1415 for an impartial due process hearing are instead mandatory and exhaustive and therefore do not encompass the CRP.

A comparison of the CRP and 34 C.F.R. §§ 300.506–300.515 reveals that while the CPR may be an alternative means to enforce the provisions of the IDEA, the CRP is not does not fall within the exhaustive list of procedural requirements contemplated by § 1415. The implementing regulations for 20 U.S.C. § 1415(f, g, i(2)) are set forth in Title 34, Part 300, Subpart E of the Code of Federal Regulations "Assistance to States for the Education of Children with Disabilities: Procedural Safeguards Due Process Procedures for Parents and Children," 34 C.F.R. §§ 300.506–300.515. In contrast, the implementing regulations establishing the CRP, pursuant to which Plaintiffs' complaint was filed before the MDCFL, are set forth in Title 34, Part 300, Subpart F of the Code of Federal Regulations, "Assistance to States for the Education of Children with Disabilities: State Administration State Complaint Procedures," 34 C.F.R. §§ 300.660–300.662. The CRP fail to provide the mandatory procedural protections established in 20 U.S.C. § 1415 and in the implementing regulations 34 C.F.R. §§ 300.506–300.515: the right to be accompanied and advised by counsel; the right to present evidence; the right to confront, cross-examine, and compel the attendance of witnesses; the absolute right to an appeal; the right to file a civil action to appeal the findings and decision rendered pursuant to the CRP. In addition, while 34 C.F.R. § 300.515 provides for the recovery of attorneys' fees and costs, no provision for such recovery is set forth by 34 C.F.R. § 300.660–300.662. The absence of such a provision further supports the proposition that a complaint initiated under the CRP is not an "action or proceeding" brought under § 1415, for to

hold otherwise would result in the unintended availability of attorneys' fees and costs for the prevailing party in the CRP.

Examination of the authorizing statutes for the CRP and its predecessors as compared to the authority for the due process procedures of 34 C.F.R. §§ 300.506–300.515 further supports the finding that a complaint filed pursuant to the CRP, 34 C.F.R. §§ 300.660–300.662, is not an "action or proceeding" brought under 20 U.S.C. § 1415. *See Laughlin,* 686 P.2d at 391 (noting that "it is elementary that the authority for an agency's administrative acts must be found in an enabling statute"). The initial complaint resolution procedures were promulgated in 1972 as 45 C.F.R. § 121a. 602 under the IDEA's predecessor statute, the Education of the Handicapped Act ("EHA"). *Laughlin,* 686 P.2d at 390 n. 7; *see also, Beth v. Carroll,* 87 F.3d 80, 82 (3d Cir.1996). The authority for the procedures lay in EHA § 1412(6), which provided that "[t]he State educational agency shall be responsible for assuring that the requirements of this subchapter are carried out." *Id.* On April 3, 1980, the complaint procedure requirement of EDGAR was substituted for 45 C.F.R. § 121a. 602 and codified in 1980 at 45 C.F.R. § 100b. 780 and ultimately at 34 C.F.R. § 76.780–782. *Laughlin,* 686 P.2d at 390 n. 7. From 1980 until 1993 the authority for EDGAR was found in the General Education Provisions Act at 20 U.S.C. § 1221e–3(a)(1), and since 1993 authority has been derived from the Elementary and Secondary Education Act of 1965 at 20 U.S.C. § 2831(a). *Beth,* 87 F.3d at 82.[3]

Plaintiffs argue that as a result of the July 8, 1992 transfer of the implementing regulations for the CRP to Part 300 of Title 34 of the Code of Federal Regulations-the implementing regulations for the IDEA-a complaint filed under the CRP is

---

**3.** On October 20, 1994, 20 U.S.C. § 2831(a) was omitted in the general amendment of the Elementary and Secondary Education Act of

1965 by Pub.L. 103–382, Title I, § 101. *See* 20 U.S.C. § 2831, "Historical and Statutory Notes."

thereafter filed under § 1415. The transfer of implementing regulations, however, does not change the underlying authority for the original codification of such regulations. Furthermore, even if this Court were to except the proposition that by transferring the EDGAR regulations to Part 300 of Title 34, the authority for said regulations was also transferred to the IDEA, this Court notes that the CRP are codified in Subpart F, "State Administration: State Complaint Procedures," rather than Subpart E, "Procedural Safeguards: Due Process Procedures for Parents and Children"-the implementing regulations for the IDEA § 1415. Thus, while the original authority for the CRP in 1972 was found in the IDEA and an unconvincing argument can be made that the current authority for the CRP is the IDEA, this Court finds that said authority has never been and is not currently derived from § 1415. *See, e.g., Laughlin,* 686 P.2d at 390 (finding that because the court was reviewing a "complaint hearing" designed to meet the requirements of section 1412(6) and 45 C.F.R. 121a. 602(1972), § 1415 did not apply to the present matter); *Beth V.,* 87 F.3d at 87 (finding that the nexus between the complaint resolution system and the IDEA's mandate is evident by reference to the statutory language of the IDEA in § 1412(6) which imposes broad obligations upon the SEA).

### a. Attorneys' Fees Incurred During Mediation

In addition to relying on the now repealed expansive language of § 1415(b) for the proposition that a complaint initiated under the CRP was an "action or proceeding" brought under § 1415, *Upper Valley* also justified said finding by noting that "[t]his is not the first time" that a court has found 20 U.S.C. § 1415(i)(3) to authorize the award of attorneys' fees in administrative proceedings other than due process hearings, as several courts have held attorneys' fees to be available for work done in mediation. *Upper Valley,* 973 F.Supp. at 435. *Upper Valley* noted that

attorneys' fees are available despite the fact that, at the time, "mediation [was] prescribed by neither the IDEA nor specific regulations. Rather, a note to the regulations governing due process hearings merely allow[ed] states to suggest mediation." *Upper Valley,* 973 F.Supp. at 436 (citing 34 C.F.R. § 300.506 n.)

*Upper Valley* 's reliance of recovery of attorneys' fees during mediation to enforce provisions of the IDEA is, however, unpersuasive for two fundamental reasons. First, the cases cited by *Upper Valley* as allowing for recovery of attorneys' fees incurred during mediation involved complainants for whom the opportunity to initiate a § 1415(f) or (k) hearing was available and who engaged in mediation in lieu of or prior to initiation of such procedures; *see, K.A.L. v. Salem Board of Education,* 1994 WL 327160 (D.N.J.); *E.M. v. Millville Board of Education;* 849 F.Supp. 312 (D.N.J.1994); *Masotti v. Tustin Unified School District,* 806 F.Supp. 221 (C.D.Cal. 1992); *E.W. ex. rel. B.W. v. Millville Bd. of Educ.,* 25 IDELR 809 (D.N.J.1997). Accordingly, in each case, the complaint at issue was filed under 20 U.S.C. § 1415(b)(6) rather than the CRP and enjoyed the procedural protections set forth for such complaints in § 1415. Furthermore, although at the time the above-cited cases were filed the IDEA § 1415 did not yet require the establishment of mediation procedures, the option for states to provide such procedures was clearly set forth in 34 C.F.R. § 300.506 n as part of the implementing regulations for § 1415, indicating that, at a state's discretion, mediation could constitute an optional step among the mandatory due process protections due in an "action or proceeding" filed under § 1415. Secondly, said cases cited by *Upper Valley* also involved complaints prior to derogation of the expansive language of § 1415(b) which provided that the procedures required by § 1415 would "include, but not be limited to" those set forth therein. Thus, as *Upper Valley* found that under such language the § 1415 procedures encompassed the CRP, the same

logic could be extended to find that the optional mediation procedures set forth in 34 C.F.R. § 300.506 n also constitute an additional procedure for the purposes of § 1415(b).

Thus, that courts have awarded attorneys' fees for work done in mediation under the IDEA, prior to the June 4, 1997 amendments, for a complaint filed pursuant to § 1415(f) or (k) is inapposite to the question of whether attorneys fees are available for a complaint filed pursuant to the CRP, whose authority lies in 20 U.S.C. § 2831 rather than 20 U.S.C. § 1415 and for which the due process protections of § 1415(f) or (k) are not available.

### 2. Case Law

There is ample support for the proposition that when a complainant pursues a state administrative remedy to enforce a federal statute, recovery for attorneys' fees, as provided for in such statute, is only available when the state administrative proceedings are explicitly authorized and mandated by said federal statute.

In *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), the respondent "filed an employment discrimination charge with the EEOC, which, *as required by Title VII*, forwarded the complaint to the appropriate New York administrative agency." *Id.* at 54, 100 S.Ct. 2024 (emphasis added). Ruling on respondent's claim for attorneys' fees incurred during the state administrative proceedings, the Supreme Court held that "Sections 706(f) and 706(k) of Title VII authorize a federal court action to recover an award of attorney's fees for

work done by the prevailing complainant in state administrative and judicial proceedings to which the complainant was referred *pursuant to the provisions of Title VII." Id.* (emphasis added).[4] The Court found support for its conclusion in the "scheme of interrelated and complementary state and federal enforcement" established in Title VII which provides that, "[i]nitial resort to state and local remedies is mandated, and recourse to the federal forums is appropriate only when the State does not provide prompt or complete relief." *Id.* at 65, 100 S.Ct. 2024 [citation omitted];[5] *see also, Webb v. Board of Education of Dyer County Tennessee*, 471 U.S. 234, 240, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985) (finding that *Carey* "arose under a statute that expressly requires the claimant to pursue available state remedies before commencing proceedings in a federal forum.")

Similarly, the Court in *Webb* found that a petitioner who retained counsel to represent him before the Board of Education of Dyer County challenging his firing as race-based discrimination was not entitled to an award for attorneys' fees incurred during the Board hearing because such an action was not an "action or proceeding" to enforce 42 U.S.C. § 1983 within the meaning of § 1988. Section 1988 provides that:

[i]n any action or proceeding to enforce a provision of §§ 1981, 1982, 1983, 1985 and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a rea-

**4.** "Section 706(k) of the Civil Rights Act of 1964, 78 Stat. 261, 42 U.S.C. § 2000e–5(k), provides that:

[i]n any action or proceeding under this title the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs." *Carey*, 447 U.S. at 60, 100 S.Ct. 2024

**5.** The Court noted that under Title VII:

[w]hen a charge is filed with the EEOC prior to exhaustion of state or local remedies, the Commission refers the complaint to the appropriate local agency. The EEOC then holds the complaint in "suspended animation." [citation omitted]. Upon termination of the state proceedings or expiration of the 60–day deferral period, whichever comes first, the EEOC automatically assumes concurrent jurisdiction of the complaint.
*Carey*, 447 U.S. at 64, 100 S.Ct. 2024.

sonable attorney's fee as part of the costs.

*Webb*, 471 U.S. at 234, 235–236, 236 n. 1, 105 S.Ct. 1923. The Court explicitly distinguished *Carey*, holding that:

> [t]he difference between *Carey* and this case is that in *Carey* the statute that authorized fees, Title VII, also required a plaintiff to pursue available state administrative remedies. In contrast, nothing in § 1983 requires that a plaintiff exhaust his administrative remedies before bringing a § 1983 suit. *See Patsy v. Florida Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172.

*Id.* at 241, 105 S.Ct. 1923 [citation omitted].[6]

Likewise, in *Derheim v. Hennepin County Bureau of Social Services, Department of Community Services*, 524 F.Supp. 1321 (D.Minn.1981), plaintiffs retained an attorney to appeal the revocation of their Foster Family Home license to the Commissioner of Public Welfare, asserting that their claims involved "the same nucleus of operative facts upon which a section 1983 claim could be based." *Id.* at 1322–23. Plaintiffs subsequently filed an action in federal court under 42 U.S.C. § 1988 and 1983 to seek attorneys' fees for the legal work done in the state administrative proceedings. The court identified the pertinent issue as:

> whether a person having two different forums to choose between in seeking redress from an action of a state, either a state administrative procedure or through a section 1983 action in court of general jurisdiction, may choose the state administrative procedure and, if successful, later bring an independent action in a federal court to recover attorney's fees under section 1988.

*Id.* at 1323. In resolving the issue, the *Derheim* court distinguished *Casey*, noting that the Supreme Court's construction of the phrase "any action or proceeding" to encompass state administrative proceedings was "largely based on the remedial scheme established by Title VII," in which the term "proceeding" clearly refers also to state or local proceedings and in which complainants are required to resort to state and local remedies prior to invoking federal remedies. *Id. Derheim* found that the reasoning in *Carey* was not controlling because unlike the scheme set forth in Title VII, "a section 1983 plaintiff is not required ... to exhaust the available administrative remedies."[7] *Id.* at 1324. The court found instead that:

> the plaintiffs had a choice between two avenues for obtaining the relief of having their FFH license reinstated. They could have brought a section 1983 action in federal court, or they could have filed an appeal in the state administrative

---

6. The court also rejected petitioner's argument that he was entitled to recover on the theory that "the time spent by counsel in the Board proceeding was 'reasonably expended' in preparation for the court action and therefore compensable under the rationale of *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)," which provides that the time compensable under § 1988 is that "reasonably expended on the litigation." *Webb* held that the ruling in *Hensley* did not sweep so broadly as to provide for recovery for work, analogous to that done in the context of litigation, performed during administrative proceedings even if such work were "reasonably related to the enforcement of federal civil rights." *Webb*, 471 U.S. at 242, 105 S.Ct. 1923.

7. The court distinguished state administrative proceedings to enforce provisions of §§ 1983 and 1988 and those to enforce Title VII, finding that:

> [e]ven if exhaustion of administrative remedies were required in section 1983 cases, the type of administrative remedy available distinguishes section 706(k) of title VII from section 1988. In Title VII actions, ... the administrative agency deals with the same facts and legal issues as are raised in Title VII lawsuits in federal courts. The state administrative remedies available to a section 1983 plaintiff, however, are not designed to conciliate and resolve the same legal issues as may be involved in a section 1983 lawsuit ... [and] may deal with a much different array of issues.

*Derheim*, 524 F.Supp. at 1324.

agency. They chose the latter, and obtained complete relief.

*Id.* at 1324. Accordingly, the court found that plaintiffs' administrative action was not an "action or proceeding within the meaning of section 1983" and denied plaintiffs' claim for attorney's fees. *Id.* at 1325.

█ This Court finds that *Carey, Webb,* and *Derheim* stand for the proposition that a claim filed under state administrative proceedings, for which there is no prior or subsequent connected court action, to enforce a federal statute constitutes an "action or proceeding" brought under such statute when the state administrative proceedings are a mandatory stage of the remedial scheme contemplated by the federal statute and must be exhausted prior to the filing of a federal claim. Accordingly, this Court applies said standard to the present matter, finding support for such analysis in S. Rep. 99–112 (July 25, 1985) which provides that Congress intended that the fee provisions of the IDEA:

> should be interpreted consistent with fee provisions of statutes such as title VII of the Civil Rights Act of 1964 which authorizes courts to award fees for time spent by counsel in mandatory administrative proceedings under those statutes. *See New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), (compare *Webb v. Board of Education for Dyer County,* 471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985) in which the court declined to award fees for work done at the administrative level because the statute under which the suit was brought did not require the exhaustion of administrative remedies prior to going to court).

Under the IDEA, judicial review pursuant to 20 U.S.C. § 1415(i)(2) is not available until a plaintiff has exhausted the administrative remedies provided under §§ 1415(f) and (g) unless: (1) exhaustion would be futile; (2) exhaustion would fail to provide adequate relief; (3) "an agency has adopted a policy or pursued a practice of general applicability that is contrary to

law." *Association for Community Living in Colorado v. Romer,* 992 F.2d 1040, 1043–44 (10th Cir.1993); *see also, Honig v. Doe,* 484 U.S. 305, 326, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) (noting that judicial review under § 1415(i)(2) is normally not available until all administrative proceedings are completed unless exhaustion would be futile or inadequate); *Association for Retarded Citizens of Alabama, Inc. v. Teague,* 830 F.2d 158, 160 (11th Cir.1987) (finding that the philosophy of the IDEA is that "plaintiffs are required to utilize the elaborate administrative scheme established by the Act before resorting to the courts to challenge the actions of the local school authorities" (citations omitted)); *Christopher W.,* 877 F.2d at 1093 (finding that "the language of § 1415 of the [IDEA] indicates that the administrative procedures outlined in the statute are to be pursued prior to recourse to the district courts").

Courts have found that the CRP procedures, formerly known as EDGAR procedures, are "not an adequate alternative to exhausting administrative remedies under the IDEA." *Romer,* 992 F.2d at 1045 (citation omitted); *see also Richards v. Fairfax County School Board,* 798 F.Supp. 338 (E.D.Va.1992); *Christopher W.,* 877 F.2d at 1095 (finding that as plaintiff did not pursue any administrative remedy other than the initial EDGAR complaint, the federal court had jurisdiction over the case only if it fell under one of the exceptions to the exhaustion doctrine). The court in *Romer* found that although an EDGAR complaint notified the accused party of "the alleged violations and afford[ed] it an opportunity to correct the alleged error, [citation omitted], it did not further any of the other purposes of the exhaustion requirement." *Romer* held that:

> [u]nlike EDGAR, the IDEA was carefully tailored to ensure that complainants receive the benefits of a full administrative hearing prior to seeking judicial review and that the reviewing court has the benefit of an administrative record.

[citation omitted]. Allowing plaintiffs to file EDGAR complaints in lieu of exhausting administrative remedies under the IDEA would undermine these important goals.

*Id.* at 1045. Similarly, *Richards v. Fairfax County School Board,* 798 F.Supp. 338 (E.D.Va.1992) noted that the provisions of the IDEA establish:

a formal, adjudicatory hearing before an impartial hearing officer, and the right of parties aggrieved by the outcome of the hearing process to appeal to federal or state court ... The plaintiffs elected not to avail themselves of these administrative procedures ... Rather ... they initiated an unrelated administrative complaint process pursuant to EDGAR. Not only is this procedure nowhere set forth in the [IDEA], but it is different in purpose, scope and procedure from the administrative relief provided for under the statute, and provides no statutory entitlement to sue a local school system, or its officials, in federal court ... [i]f the plaintiffs are deemed to have exhausted their remedies under the statute simply by resorting to EDGAR procedures, the appeals process set forth in the [IDEA] will be entirely frustrated.

*Id.* at 342.

Thus, it is clear that the CRP, formerly known as EDGAR procedures, are not mandatory procedures contemplated by the IDEA that must be exhausted prior to initiation of a civil action for judicial review. To the contrary, the CRP are "different in purpose, scope and procedure" from the impartial due process procedures set forth in § 1415 and are therefore insufficient to satisfy the exhaustion requirement of the IDEA. Furthermore, for a court to find that a party has exhausted "the elaborate administrative scheme established by the Act" it is not imperative

that said party have resorted to both the CPR procedures as well as the impartial due process procedures set forth in § 1415(g) and (g). Thus, in to find that a party has exhausted administrative remedies under the IDEA § 1415, that party's initiation of the CRP is neither necessary nor sufficient.[8]

3. Public Policy

In conjunction with the present matter before this Court, Plaintiffs' counsel, Kane, corresponded with the MDCFL, the SEA in Minnesota responsible for resolving complaints through the CRP, to inquire as to MDCFL's position regarding the award of attorney's fees generated through the CRP. The MDCFL responded by expressing their categorical opposition to the award of attorney's fees in such cases, emphasizing the fundamental differences between the CRP and the impartial due process procedures of § 1415. *See* ISD No. 625 Ex. 29. The letter from the MDCFL to Plaintiffs' counsel states that:

the complaint system differs greatly in that trained independent complaint investigators examine issues of alleged violations exclusively. The complaint system consequently is less adversarial in nature and does not require either party to conduct legal research to either allege or respond to a complaint ... [T]he complaint system is designed to be a free service to any person or organization who wishes to bring an allegation. Legal counsel is not necessary in this forum as anyone may state an allegation and request our investigation of that matter.

*Id.*

Similarly *Beth V.,* notes that:

the complaint resolution procedures were evidently designed by the DOE

---

**8.** Plaintiffs in the present matter concede as much in response to the District's argument that this case should be dismissed for failure to exhaust administrative remedies. Plaintiffs respond to the District's argument not by denying the validity of the exhaustion require-

ment and the insufficiency of the CRP procedures to meet said requirement but instead by noting that the requirement is applicable only in cases of substantive review on the merits not in actions for attorney's fees. *See* Pl. Mem. Opp. Summ. J. at 16–18.

[Department of Education] to afford persons such as the plaintiffs an opportunity to bring to the attention of a state agency claims of non-compliance with the IDEA or related regulations without ... "having to resort to *costly legal actions*" for prompt and expeditious correction.

87 F.3d at 87.

This Court agrees that as an informal and less adversarial process, the purpose of the CRP is to provide a "free service" through which parents can seek enforcement of the IDEA without engaging in an adversarial process and incurring the corresponding fees of "costly legal action." *See, e.g.,* 57 FR 44794 (1992) (describing the CRP as an "informal" process in juxtaposition to the "formal" complaint procedures set forth in § 1415 and 34 C.F.R. § 300.506–300.515.) The more amicable and informal purpose of the CRP is facilitated by the role of the SEA, in the present case the MDCFL, which acts as an impartial investigator, negating the need for each individual party to conduct discovery, investigation, and research and thereby precluding the need for retention of counsel to perform such tasks.

In light of the above policy considerations, this Court finds that to provide for recovery of attorneys' fees and costs under the CRP would contravene the above-stated purposes and objectives of the CRP to provide an economical and non-adversarial complaint resolution process. Furthermore, facing the same exposure to attorneys' fees under the CRP as under the impartial due process proceedings of § 1415, defendants would likely demand the procedural safeguards of a due process hearing under § 1415. If defendants were thus compelled to avoid the CRP, the utility of the CRP as an informal mechanism for effective enforcement of the provisions of the IDEA would undoubtedly be significantly reduced.

*III. Conclusion*

Accordingly, this Court finds that a complaint initiated under the CRP, 34 C.F.R. §§ 300.660–300.662, is not an "action or proceeding" brought under § 1415 for the purposes of § 1415(i)(3). Therefore, a prevailing party in the CRP may not recover attorneys' fees pursuant to § 1415(i)(3). Thus, this Court lacks jurisdiction over the present matter and grants the District's motion for summary judgment on these grounds.

In light of such finding, this Court declines to address Defendant's other arguments in support of its motion for summary judgment: (1) that Plaintiffs failed to exhaust administrative remedies; (2) that Plaintiffs' action is barred by the applicable statute of limitations period; and (3) that Plaintiffs' are not entitled to attorneys' fees because they are not "prevailing parties."

**ORDER**

Accordingly, based on the foregoing and all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

(1) Defendant's motion for summary judgment is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.