Alia **SABUR, by her mother and natural guardian Julie KESSLER a/k/a Julie Sabur, and her father and natural guardian, Mohammed Sabur, for Alia Sabur and for themselves, Plaintiffs,**

v.

**William BROSNAN, Evelyn Abruzzo, Gary Burns, Dolly Narain, Northport—East Northport Board of Education and Northport—East Northport Union Free School District, Defendants.**

No. CV–00–2660 (ADS).

United States District Court, E.D. New York.

May 8, 2002.

294

Union Free School District (the "Northport School District") (collectively, the "School District") failed to provide Alia with appropriate educational services in violation of the Individuals with Disabilities Education Act ("IDEA"), 42 U.S.C. § 1983 and Article XI, § 1 of the New York State Constitution. Presently before the Court is a motion by the School District to dismiss seven of the eight counts in the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

The facts are taken from the amended complaint unless otherwise stated. Alia is a twelve year old girl who has advanced skills in, among other things, mathematics, music, reading and science. In the fall of 1995, Alia enrolled in the Dickinson Avenue Elementary School ("Dickinson"), which is part of the School District.

For the 1995–1996 school year, the School District provided Alia with an individually-tailored curriculum, which placed her in the first grade with children her own age for art, physical education, music and lunch, while allowing her to spend time with older students in the areas of reading and mathematics. In addition, the School District provided Alia with individual instruction in computer science.

For the 1996–1997 school year, Alia entered the second grade and continued with her individually-tailored curriculum. In particular, the School District provided Alia with individual instruction in mathematics and computer science while she remained with her second grade classmates for half of the day. In June of 1997, the Saburs requested that the School District provide Alia with a long-term education plan.

Frederick K. Brewington, Hempstead, NY, for Plaintiffs.

Ingerman Smith, L.L.P. by Warren H. Richmond, Northport, NY, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiffs Julie Sabur and Mohammed Sabur (collectively, the "Saburs") bring this action on behalf of their daughter Alia Sabur ("Alia") alleging that the defendants William Brosnan ("Brosnan"), Evelyn Abruzzo ("Abruzzo"), Gary Burns ("Burns"), Dolly Narain ("Narain"), the East Northport Board of Education (the "Northport BOA") and the East Northport

For the 1997–1998 school year, Alia entered the third grade. During this school year, Alia took a class in physical science at the Northport middle school. There, Alia encountered older students who occasionally ridiculed and harassed her. Also, Alia continued to receive individual instruction at Dickinson. By the fall of 1998, the School District offered the Saburs a choice: either agree to have Alia take math and science in a ninth grade class or have Alia remain in a fourth grade class for these subjects. The Saburs chose to keep Alia in the fourth grade for the 1998–1999 school year.

In November of 1998, the Saburs filed a request for a hearing before an Impartial Hearing Officer ("IHO") to investigate the status of an alleged referral in 1997 by the School District to the Committee on Special Education ("CSE") to evaluate Alia's educational needs and to determine the appropriate accommodations for Alia's special needs. A hearing was set for December 23, 1998. On that date, the Saburs, accompanied by counsel, appeared before the IHO with a private camera crew hired by the Saburs to record the hearing. The IHO refused to proceed with the hearing unless the Saburs waived their request to record the proceedings. The Saburs refused to waive their request and the hearing was adjourned for a ruling from the State Education Commissioner's Office (the "Commissioner") on the issue of whether the IHO must permit the hearing to be recorded.

Shortly thereafter, the Commissioner informed the IHO that the decision whether to permit the recording of the hearing is within his discretion. The IHO adhered to his earlier decision to prohibit video recording and re-scheduled the hearing for January 13, 1999. On January 12, 1999, the Saburs filed a written request that the IHO recuse himself claiming that he could not render a fair decision in this matter.

On January 13, 1999, the Saburs again requested that the IHO recuse himself citing his alleged bias in favor of the School District. After affording their counsel and the Saburs themselves an opportunity to note their reasons for the recusal request, the IHO denied the request and stated that the hearing will proceed with or without the Saburs. The Saburs then chose to leave and not participate in the hearing. The IHO continued the proceedings in the absence of the Saburs.

On January 22, 1999, the IHO issued a decision remanding the case back to the CSE. *In the Matter of A.S. Mr. and Mrs. S.*, Impartial Hearing, Northport East Northport Union Free District School (Jan. 22, 1999) is annexed as Exhibit I to the Affidavit of Warren H. Richmond sworn to in November of 2000 (the "Richmond Affidavit"). In particular, the IHO stated "[i]t is the parent's responsibility to follow the process, as explained in 200.4 of the Commissioner's regulations, to go through the necessary testing, health evaluation, social evaluation, and educational evaluation necessary to comply with the Commissioner's regulations." *Id.*

On January 29, 1999, the School District sent the Saburs consent forms for educational and psychological evaluations to enable the CSE to make determinations with respect to Alia's classification and placement. Richmond Affidavit ¶ 14. The Saburs did not return the consent forms to the School District. *Id.* On March 10, 1999, the CSE met with respect to Alia and concluded:

Although assessments do exist within Alia's file, these assessments are outdated and not comprehensive enough for the CSE's purpose. The parents wish to pursue an Independent Educational

Evaluation. The district concurs with this request and will provide parameters for an Independent Educational Evaluation which will include psychological, educational and speech assessments. Upon completion, the parents will submit these evaluations to the school district for review. The CSE will reconvene to consider these evaluations within special education regulations. Targeted case management will be provided.

Minutes of CSE, Northport—East Northport, dated March 10, 1999 annexed as Exhibit M to the Richmond Affidavit. The Saburs did not submit an Independent Educational Evaluation to the School District. Instead, the Saburs enrolled Alia as a student at the State University of New York, Stony Brook, where she currently maintains a 3.95 grade point average.

On May 11, 2000, the Saburs commenced this action against the School District and the New York State Department of Education alleging, among other things, that the defendants failed to provide Alia with appropriate educational services. On July 23, 2001, this Court dismissed all of the claims which arose out of the allegation that Alia was not provided an appropriate education because the Saburs failed to exhaust their administrative remedies. *Sabur v. Brosnan*, No. 00–2660, slip op. (E.D.N.Y. July 23, 2001). In addition, the Court dismissed the remaining claims, except for one involving the First Amendment, for failure to state a claim upon which relief can be granted. *Id.* at 17. Finally, the Court granted the Saburs permission to file an amended complaint within thirty days of its decision. *Id.*

On August 23, 2001, the Saburs filed an amended complaint in which they assert seven causes of action. Counts one through four allege violations under 28 U.S.C. § 1983 for the failure to provide Alia with appropriate educational services.

Count five charges a violation under the First Amendment for hindering the Saburs' right to speak publicly concerning Alia. Count six alleges a violation under the IDEA for the failure to provide Alia with appropriate educational services. Count seven alleges a violation of Article XI, § 1 of the New York State Constitution for the failure to provide Alia with appropriate educational services.

Presently before the Court is a motion by the School District to dismiss all of the counts in the amended complaint, except count five, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## II. DISCUSSION

### A. The Standard for Rule 12(b)(1)

When considering a motion for lack of subject matter jurisdiction under Rule 12(b)(1), the Court may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional question. *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 n. 6 (2d Cir.2001); *Antares Aircraft, L.P. v. Fed. Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds*, 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992); *Exch. Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1130 (2d Cir. 1976). Under Rule 12(b)(1), the Court must accept as true all material factual allegations in the complaint, but will not draw inferences favorable to the party asserting jurisdiction. *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998); *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir.1992). Hearsay statements contained in affidavits may not be considered. *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986).

## B. The IDEA

Congress passed the IDEA to ensure that children with disabilities receive "a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living. . . ." 20 U.S.C. § 1400(d)(1)(A). IDEA establishes an educational scheme which requires each state that receives federal education funds to prepare an Individualized Education Program ("IEP") for each disabled child. *Hope v. Cortines*, 872 F.Supp. 14, 16 (E.D.N.Y.1995) (citation omitted), *aff'd on the opinion of the district court*, 69 F.3d 687 (2d Cir.1995).

▪ The IEP provides, among other things, the child's present performance level, goals and objectives, specific services that will permit the child to achieve those goals, and evaluation criteria and procedures to evaluate whether the child has met the goals outlined. 20 U.S.C. § 1414(d)(1)(A). "The IEP is the central mechanism by which public schools ensure that their disabled students receive a free appropriate public education." *Polera v. Bd. of Educ. of the Newburgh Enlarged City School Dist.*, 288 F.3d 478, 481–82 (2d Cir.2002).

The IDEA mandates that states "offer parents of a disabled student an array of procedural safeguards designed to help ensure the education of their child. . . ." *Id.* at 482–83. "Primary among the procedural safeguards employed by IDEA is the requirement that states provide parents of disabled students the right to seek review of any decision concerning their children's education." *Hope*, 872 F.Supp. at 16. As such, parents may file complaints about "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C.

§ 1415(b)(6). Parents must first seek review through an impartial hearing conducted by either the local school district or the state. *Id.* § 1415(f)(1). If the hearing is done by a local school district, the parents may appeal the decision to the state educational agency. *Id.* § 1415(g). Only after the parents have exhausted these procedures may they seek review in either federal or state court. *Id.* § 1415(*l*).

▪ Congress permits states to fashion their own educational scheme to comply with the IDEA. *Heldman v. Sobol*, 962 F.2d 148, 152 (2d Cir.1992). This, New York has done. *Id.* In New York, the CSE, which is made up of individuals appointed by the board of education or the trustees of the school district, prepares the IEPs for disabled children. N.Y. Educ. Law § 4402(1)(b)(1). New York has a two-level system for the review of an IEP. First, a hearing officer, appointed by the board of education from a list of state-certified officers, conducts the initial hearing and makes a determination with regard to the action of the CSE. N.Y. Educ. Law § 4404(1). If unsatisfied with this determination, a party may then appeal the determination to a State Review Officer ("SRO"). *Id.* § 4404(2).

▪ "Although the IDEA provides for a federal cause of action to enforce such rights, it imposes a broadly applicable requirement that plaintiffs first exhaust administrative remedies. . . ." *Polera*, at 482–83. Indeed, "[a] plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction." *Id.* (citing *Hope v. Cortines*, 69 F.3d 687, 688 (2d Cir.1995)).

### 1. The Applicability of the IDEA's Exhaustion Requirement to the Plaintiffs' Section 1983 Claims

▪ Where a plaintiff brings a claim under Section 1983 that seeks relief avail-

able under the IDEA, she or he must first exhaust the administrative remedies under the IDEA. *See Polera*, at 482–83 (citing 20 U.S.C. § 1415(*l* )); *Hope*, 872 F.Supp. at 19 (stating that the exhaustion requirement applies to Section 1983 claims which seek relief that IDEA could provide). A plaintiff may not frame a cause of action under Section 1983 or any other federal statute and thus avoid the exhaustion requirements. *See Polera*, at 488–89 (stating that a plaintiff may not sidestep the exhaustion requirements of the IDEA).

■ Counts one through four allege violations under Section 1983. Each of these counts seek relief for the alleged failure to provide Alia with appropriate educational services. The IDEA is precisely intended to remedy this type of claim. *See Polera*, at 488–89 (stating that the IDEA was intended to remedy a claim were the plaintiff sought relief for a school district's alleged failure to provide her with appropriate educational services). Accordingly, absent an applicable exhaustion exception, the Saburs were required to exhaust their administrative remedies before bringing these claims.

### 2. The Requirement of Exhaustion under IDEA

■ "The IDEA's exhaustion requirement was intended to channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances." *Polera*, at 486–87. "The exhaustion requirement 'prevents courts from undermining the administrative process and permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes.' " *Id.* (citing *Heldman v. Sobol*, 962 F.2d 148, 159 (2d Cir.1992)). "Exhaustion of the administrative process allows for the exercise of discretion and

educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Id.* (internal quotation marks and citations omitted).

■ The Second Circuit has recently stated:

[T]he exhaustion requirement is predicated on Congress's belief, expressed through the statutory scheme, that administrative agencies can 'get it right': that the agencies themselves are in the optimal position to identify and correct their errors and to fine-tune the design of their programs. Sweeping exceptions to the exhaustion requirement are at odds with this belief.

*Polera*, at 489–90. It is undisputed that the Saburs failed to exhaust their administrative remedies under the IDEA. Accordingly, the Court need only decide whether this failure is excusable.

### 3. Exceptions to the Exhaustion Requirement under the IDEA

■ Congress provided three general situations where the exhaustion of the administrative remedies under the IDEA are not required: (1) where it would be futile to use the due process procedures; (2) where an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) where it is improbable that adequate relief can be obtained by pursuing administrative remedies. *Mrs. W. v. Tirozzi*, 832 F.2d 748, 756 (2d Cir.1987) (citations omitted). The Second Circuit has collapsed exceptions two and three into exception one, namely the futility exception. *Hope*, 872 F.Supp. at 22 ("The Second Circuit in *Heldman* effectively collapsed (2) and (3) above into

the futility exception . . . ."). *See also Polera*, at 489–90 (stating that exhaustion is futile if the "administrative procedures do not provide adequate remedies.") (internal quotation marks and citations omitted).

### a. The Futility Exception

 A plaintiff has the burden of showing that the futility exception applies. *Polera*, at 489–90 n. 8. The Saburs argue that the futility exception applies to her claims for the following reasons: (a) failure of the School District to timely conduct the administrative proceedings; (b) failure of the CSE to evaluate Alia in a timely fashion; (c) failure of the School District to develop and implement an adequate educational plan; (d) failure of the School District to develop an educational plan unless the Saburs waived their right to legal recourse against the School District; (e) failure of the School District to comply with the IHO's determination; (f) failure to appoint an unbiased hearing officer; and (g) failure of the School District to produce certain notes concerning Alia. None of these arguments excuse the exhaustion requirement.

The Court finds that the administrative proceedings were conducted in a timely fashion. In November of 1998, the Saburs requested a hearing before an IHO. A hearing was set for December 23, 1998. On that date, the Saburs appeared with a private camera crew, which compelled the IHO to seek instructions on the use of video recording devices at the hearing. After receiving the appropriate instructions, the IHO set a new hearing date for January 13, 1999. Despite the Saburs' choice not to participate in the hearing, the IHO held the hearing and issued a written decision on January 22, 1999.

In addition, the Court finds that the Saburs are responsible for the CSE's inability to evaluate and place Alia in an IEP. Seven days after the written decision of the IHO, the School District sent the Saburs consent forms for educational and psychological evaluations to permit the CSE to make a determination on Alia's classification and placement in an IEP. The Saburs did not return the consent forms. Approximately a month and a half after the IHO's decision, the CSE met and stated that they will be in a position to evaluate Alia once the Saburs submit an Independent Educational Evaluation, which they wished to do. The Saburs did not submit an Independent Educational Evaluation. As such, the Saburs' failure to comply with these instructions is largely the reason that the CSE was and is unable to evaluate Alia.

Courts in this circuit have routinely held that the futility exception does not apply where the parents unilaterally withdraw from the administrative hearing before its conclusion. *See Kielbus v. Wertheimer*, No. 01–1130, 2002 WL 24446, *3 (E.D.N.Y. Jan. 4, 2002) (withdrawing from the hearing process without allowing the IHO a chance to fashion a remedy); *Ajala v. N.Y.C. Bd. of Educ.*, No. 97–0469, 1997 WL 736699, *4 (S.D.N.Y. Nov. 28, 1997) (same); *D.R. v. Bedford Bd. of Educ.*, 926 F.Supp. 47, 49 (S.D.N.Y.1996) (same). Here, the Saburs unilaterally withdrew from the hearing before the IHO. Despite this withdrawal, the IHO rendered a determination which remanded the case back to the CSE for a classification and placement of Alia in an IEP. Instead of participating in the process before the CSE or appealing the IHO's determination to the SRO, the Saburs enrolled Alia in the State University of New York, Stony Brook and commenced an action against the School District in federal court.

The remainder of the Saburs' arguments to invoke the futility exception lack merit because each argument could have been

and should have been made in the administrative proceedings. *See Garro v. State of Conn.*, 23 F.3d 734, 737 (2d Cir.1994) (stating that any alleged procedural violations by the local school district should be raised in the administrative proceedings); *D.R.*, 926 F.Supp. at 49–50 (stating that had the parents not withdrawn from the administrative process they "would have had the right to pursue an administrative appeal of the hearing officer's decision, challenging both the substance of the ruling and the alleged bias of the hearing officer."); *Jacky W. v. N.Y.C. Bd. of Educ.*, 848 F.Supp. 358, 361 (E.D.N.Y.1994) (stating that the destruction of draft opinions by the IHO can be appealed to the SRO).

By commencing this action before the exhaustion of administrative remedies, the Saburs leave the Court with an insufficient factual record to review the alleged violations. *See Garro*, 23 F.3d at 737–38 ("[T]he failure to comply with the exhaustion requirements has not only deprived the state administrative authorities of an opportunity to redress the claimed violations at a far more appropriate time but has also deprived this Court of the factual record necessary to review the alleged violations."). First, the Court has no classification of Alia because the Saburs chose not to participate in the proceedings before the CSE. Second, because the CSE had insufficient records to assess Alia, there is no IEP for the Court to review. Accordingly, the Court does not have a sufficient factual record to review the alleged violations.

Because the Saburs failed to exhaust their administrative remedies, the Court lacks subject matter jurisdiction over counts one, two, three, four and six in the amended complaint. Accordingly, the motion to dismiss these counts under Rule 12(b)(1) is granted.

## C. Article XI, § 1 of the New York State Constitution

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court should dismiss the complaint if it appears beyond doubt that the plaintiff can prove no set of facts in support of her or his complaint which would entitle her or him to relief. *King v. Simpson*, 189 F.3d 284, 286 (2d Cir.1999); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). A court must accept all well-pled factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Koppel v. 4987 Corp.*, 167 F.3d 125, 127 (2d Cir.1999); *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997). The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims. *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995).

■ As to materials presented outside the pleadings, the Second Circuit has stated that:

> Rule 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material. *See* Fed. R.Civ.P. 12(b).

*Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir.1988). The Second Circuit has strictly enforced "the conversion requirement of Rule 12(b)(6) where there is a legitimate possibility that the district court relied on inappropriate material in granting the motion." *Amaker v. Weiner*, 179 F.3d 48, 50 (2d Cir.1999). The purpose is to ensure that "courts will refrain from engaging in fact-finding when

considering a motion to dismiss, and also that plaintiffs are given a fair chance to contest defendants' evidentiary assertions...." *Id.*

In a motion to dismiss under Rule 12(b)(6), a court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.1999); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999). The Court decides the School District's motion to dismiss count seven of the amended complaint solely on the facts stated on the face of the amended complaint.

Article XI, § 1 of the New York State Constitution provides that "[t]he legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated." N.Y. Const. Art. XI, § 1. Article XI, § 1 does not create a private cause of action. *See Donohue v. Copiague Union Free School Dist.*, 47 N.Y.2d 440, 443, 418 N.Y.S.2d 375, 377, 391 N.E.2d 1352 (N.Y.1979) (stating that no private cause of action exists under Article XI, § 1 of the New York State Constitution). Accordingly, the motion to dismiss count seven is granted.

### III. CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED**, that the motion to dismiss counts one, two, three, four and six for lack of subject matter jurisdiction on the ground that the Saburs failed to exhaust their administrative remedies is **GRANTED**; and it is further

**ORDERED**, that the motion to dismiss count seven for failure to state a claim for relief is **GRANTED**; and it is further

**ORDERED**, that the parties are directed to appear forthwith before United States Magistrate Judge Michael L. Orenstein to set a discovery schedule with respect to count five in the amended complaint.

**SO ORDERED.**