Robert VULTAGGIO, by his parents and natural guardians, Amy VULTAGGIO and Robert Vultaggio, individually, Plaintiffs,

v.

BOARD OF EDUCATION, Smithtown Central School District, Smithtown Central School District, Stuart Grossman, as Director of Special Education and Individually and Brenda Clark, as Chair of the Committee on Special Education and Individually, Defendants.

No. CV 02–1004.

United States District Court, E.D. New York.

Aug. 14, 2002.

Wasserman & Steen by Lewis M. Wasserman, Esq., Patchogue, NY, for Plaintiff.

Peter G. Albert, Esq., Commack, NY, for Defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

In this action commenced by parents of a high school student, claims are set forth pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1415 (the "IDEA"), Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504") and the federal civil rights statute, 42 U.S.C. §§ 1983 ("Section 1983").

Plaintiffs seek an award of attorneys' fees pursuant to the provision in the IDEA that authorizes an award of fees to parents who are "prevailing parties" in connection with any "action or proceeding" brought pursuant to the statute. 20 U.S.C. § 1415(i)(3)(B). In addition to fees, Plaintiffs seek a declaratory judgment that Defendants intentionally discriminated against Robert Vultaggio on account of his disability and failed to make the required reasonable accommodations. Finally, Plaintiffs allege unlawful retaliation for the exercise of their rights under the First Amendment of the Untied States Constitution.

Defendants argue that an award of fees in this case is not authorized by statute and move to dismiss this cause of action. Additionally, Defendants seek dismissal of the IDEA and Section 504 claims on the ground that Plaintiffs have failed to exhaust their administrative remedies. Finally, Defendants argue that Plaintiffs' have failed to set forth sufficient facts in support of any retaliation claim. Based upon all of these arguments, Defendants move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiffs' action in its entirety. Plaintiffs oppose Defendants' motion and cross-move, pursuant to Rule 15 of the Federal Rules of Civil Procedure, for leave to file an amended and supplemental complaint.

## BACKGROUND

### I.  Factual Background

#### A.  The Parties

Plaintiffs Amy and Robert Vultaggio (the "Vultaggios") are the parents of Robert Vultaggio ("Robert"), an eighteen year-old student attending high school within the Smithtown Central School District (collectively "Plaintiffs"). Robert has long been classified as multiply disabled. Specifically, he has been classified in the past as both emotionally disturbed ("ED") and "other health impaired" ("OHI").

Named as defendants are the Smithtown Central School District (the "District"), Stuart Grossman, the District's Director of Special Education ("Grossman") and Brenda Clark, chair of the District Committee on Special Education ("Clark"). Grossman and Clark are named in their official as well as their individual capacities.

#### B.  Factual Allegations in Support of the Claims

The facts set forth below are drawn from Plaintiffs' complaint, the allegations of which are accepted as true at this stage of the proceedings.[1]

---

1. The facts set forth above are found in the original, first and proposed second amended complaint.

On April 26, 2001, the Smithtown Committee on Special Education ("CSE") met to develop an Individualized Education Plan ("IEP") for Robert for the academic year 2001–2002. Although the meeting took place that day, the IEP was not finalized. Plaintiffs allege, on information and belief, that finalization did not take place because Robert was pursuing the requirements for admission to a BOCES Cultural Arts Center where he desired placement (the "Arts Program").

The CSE met again on June 18, 2001, to develop Robert's IEP. This IEP placed Robert in a special education class with a teacher to student ratio of fifteen students to one teacher. That IEP also provided that in the following academic year, Robert would be attending the Arts Program. Plaintiffs allege that some time after drafting of this IEP, they were informed by the District that Robert would not be assigned the desired placement in the Arts Program.

Shortly thereafter, the Vultaggios retained counsel to provide advice regarding Robert's rights and, if appropriate, to file a complaint with the State Education Department regarding Robert's placement. In August of 2001, Plaintiffs' counsel submitted a complaint, on behalf of the Vultaggios, to the New York State Education Department (the "SED"). This complaint was submitted pursuant to the New York State Complaint Review Procedure (the "CRP"). The CRP complaint enumerated several alleged deficiencies in Robert's IEP. Additionally, the complaint stated the Vultaggios' belief that Robert was to be wrongfully denied admission to the Arts Program.

In September of 2001, the District submitted its response to the Vultaggios' CRP complaint. The District response was submitted by defendants Grossman and Clark. The Vultaggios replied to the District submission in October of 2001.

On October 17, 2001, the SED rendered its decision with respect to the Vultaggios' CRP complaint (the "October 17 Decision"). That decision set forth several failures in Robert's IEP and noted that these failures made it impossible for the SED to determine whether placement in the Arts Program was appropriate for Robert. The October 17 Decision directed the District to take specific actions to remedy the stated deficiencies, including drafting a new IEP for Robert by December 17, 2001.

After the SED rendered the October 17 Decision, the Vultaggios, taking the position that they had achieved prevailing party status within the meaning of the IDEA, submitted to the District an itemization of the attorneys' fees incurred in connection with the CRP and sought payment. To date, the District has not paid the Vultaggios' fees.

In November 2001, the CSE met to discuss an IEP for Robert. After this meeting, the District changed Robert's classification from a student with multiple handicaps (emotionally disturbed and other handicap) to a student with a single handicap only—"OHI." The CSE met again in December of 2001 to develop an IEP for Robert. Plaintiffs take issue with the results of the last two meetings of the CSE. Specifically, it is argued that the IEP's developed for Robert failed to comply with certain directives contained in the October 17 Decision.

II. *Plaintiffs' Complaint*

As noted above, Plaintiffs set forth claims pursuant to the IDEA, Section 504 and Section 1983. The IDEA cause of action alleges that Plaintiffs are prevailing parties and seeks an award of attorneys' fees for time spent by counsel during the CRP and the meeting of the CSE that followed. The cause of action set forth pursuant to Section 504 alleges intentional

discrimination and deliberate indifference to Robert's rights when the District failed to recommend that Robert attend the Arts Program. This cause of action also alleges a district-wide policy of discriminating against disabled students "generally relative to their admission" to the Arts Program.

Plaintiffs' final cause of action alleges retaliation. Specifically, this cause of action alleges that the District refused to consider relevant information when considering Robert's application for admission to the Arts program at the November 2001 CSE meeting. It is similarly alleged that the District failed, again, to consider relevant information when considering the suitability of the Arts Program for Robert in December of 2001. Plaintiffs allege that the District's actions were taken in retaliation for the Vultaggios exercise of their "lawful right to file a complaint with the SED" against the District. Such retaliation is alleged to violate the anti-retaliation provision of Section 504 as well as Plaintiffs' rights under the First Amendment to the United States Constitution.

Plaintiffs' request for relief seeks a declaration that, as a result of the findings of the SED in the October 17 Decision, Plaintiffs are prevailing parties entitled to an award of attorneys' fees. Plaintiffs also seek a declaration that the District's refusal to enroll Robert in the Arts Program violated the IDEA and Section 504. An order of this court is sought that would require the District to enroll Robert in the Arts Program for a period of two years. Plaintiffs also seek a declaration that the District has an unlawful practice and policy of refusing to recognize the authority of the CSE to recommend, in an IEP, a student's enrollment in a general education vocational program at BOCES. Finally, Plaintiffs seek an order declaring that all Defendants retaliated against the Vultagg-

ios in violation of Section 504 and the First Amendment.

### III. Defendants' Motion

#### A. Dismissal of the Request for Attorney's Fee

Defendants attack Plaintiffs' claim for attorneys' fees on two fronts. First, it is argued that the court lacks jurisdiction to award fees because the procedure invoked by the Vultaggios at the school district level, the CRP, does not constitute an "action or proceeding" within the meaning of the IDEA. Even assuming, however, that the CRP is deemed an IDEA action or proceeding, it is argued that fees are not appropriate here because the Vultaggios are not prevailing parties within the meaning of the statute.

#### B. Dismissal For Failure To Exhaust

In addition to seeking dismissal of the attorneys' fees claim, Defendants seek dismissal of Plaintiffs' complaint on the ground that they have failed to exhaust their administrative remedies. In support of this argument, Defendants point out that Plaintiffs have failed to address the claims raised herein before an impartial hearing officer as required by the IDEA and Section 504. The failure to exhaust is alleged to deprive this court of jurisdiction and to entitle Defendants to dismissal.

#### C. Failure to State A Claim

The final branch of Defendants' motion seeks dismissal of Plaintiffs' Section 504 and Section 1983 claims of retaliation for the alleged failure to set forth sufficient facts in support thereof.

After reviewing the statutory framework and relevant case law, the court will decide the merits of the motion.

## DISCUSSION

### I. Standards for a Motion to Dismiss

Defendants' motions are made in the context of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion to dismiss is properly granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Harsco v. Segui,* 91 F.3d 337, 341 (2d Cir.1996); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). When considering a motion to dismiss for failure to state a claim, the court can consider only the facts as set forth in the complaint or documents attached thereto. When considering the facts pled, the court must accept as true all factual allegations in the complaint. All reasonable inferences must be drawn in favor of the non-moving party. *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College,* 128 F.3d 59, 63 (2d Cir.1997). A complaint should not be dismissed simply because a plaintiff is unlikely to succeed on the merits. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

### II. The IDEA

#### A. Background: The Rights of Children and the IEP

The IDEA ensures that all children are provided a "free appropriate public education ... and related services designed to meet their unique needs ...." 20 U.S.C. § 1400(d). A "free and appropriate" education is one that benefits a child's particular educational needs with a program specifically tailored to that child. *Board of Educ. of Hendrick Hudson Cent. School District v. Rowley,* 458 U.S. 176, 181–82, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). A "Local Education Agency," in the case of New York State, the CSE, is charged with the responsibility of developing an IEP for children receiving services under the IDEA. 20 U.S.C. § 1414(d)(2)(A) (charging local education agencies with responsibility of developing IEP for each disabled child); N.Y. Educ. L. § 4402(1)(b)(1) (CSE responsibilities in development of IEP); *see Connors v. Mills,* 34 F.Supp.2d 795, 798 (N.D.N.Y.1998).

The IEP is a written document containing, *inter alia,* goals and instructional objectives, services to be provided, projections regarding the dates when such services will be offered and criteria for evaluating whether instructional objectives are being met. *Rowley,* 458 U.S. at 182, 102 S.Ct. 3034; *see* 20 U.S.C. § 1414(d)(1)(A). A student's IEP is required, by statute, to be reviewed and, if appropriate, revised, on an annual basis. *Rowley,* 458 U.S. at 182, 102 S.Ct. 3034; *see* 20 U.S.C. § 1414(d)(4)(A)(i).

The IDEA recognizes the importance of parent involvement in the development of a student's IEP. Thus, the statute incorporates procedural safeguards giving parents a meaningful opportunity to help formulate and, if necessary, object, to a school district's decision regarding their child's education. *Honig v. Doe,* 484 U.S. 305, 308, 311, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). For example, parents are invited to attended the district's CSE meeting, as members of an "IEP Team" to participate in development of their child's IEP. *See* 20 U.S.C. § 1414(d)(1)(B).

#### B. Complaint Procedures: The Due Process Hearing and the CRP

Two separate procedures exist whereby parents can challenge decisions of their local school district regarding the education of their children. One procedure, set forth specifically in the IDEA, is the impartial due process hearing. *See* 20 U.S.C. § 1415(f)(1). Such hearings are conducted by either the State or local edu-

cational agency and are presided over by an impartial hearing officer. *See* 20 U.S.C. § 1415(f)(3)(requiring that hearings be conducted by individual not employed by the State or local educational agencies). Among the rights afforded to parents participating at such hearings are the right to have counsel present, the rights to present evidence, confront, cross-examine and compel the attendance of witness and the right to obtain a transcript of the proceeding. 20 U.S.C. § 1415(h).

Where, as in the case of New York, due process hearings are held by the local educational agency, any party aggrieved by the findings may appeal the decision of that entity to the State educational agency. 20 U.S.C. § 1415(g); *see* N.Y. Educ. L. § 4404 (establishing state administrative procedure). Where the due process hearing is conducted by the State educational agency, or a decision has been appealed to that agency from a local agency, aggrieved parties may thereafter appeal such decisions by commencing a civil action in either State or Federal court. 20 U.S.C. § 1415(i)(2).

In addition to the due process hearing, a parent may present an IDEA claim on behalf of a child in the context of a CRP. The CRP is not provided for in the IDEA. Instead, it appears only in the regulations promulgated pursuant to the statute. *See* 34 C.F.R. § 300.660–300.662. The CRP is a less formal procedure. While it does not prohibit representation by counsel, it does not guarantee such a right. Nor are the other due process rights referred to above guaranteed in the context of the CRP.

Pursuant to the CRP, educational agencies are required, within sixty days after the filing of a CRP complaint, to: (1) carry out an independent investigation; (2) give the complainant an opportunity to submit additional information; (3) review all relevant information and make an independent determination as to whether the public agency is violation the IDEA and (4) issue a written decision that addresses each allegation in the complaint. 34 C.F.R. § 300.661(a); *see generally* 8 N.Y.C.R.R. § 200.5(k). An extension of this sixty day period may be granted only under "exceptional circumstances." 34 C.F.R. § 300.661(b).

The regulations governing the CRP recognize the deference to be afforded to due process hearings. For example, where a CRP complaint contains allegations that are also the subject of an ongoing due process hearing, the State is required to hold that part of the complaint in abeyance until the conclusion of the due process hearing. Additionally, any issue that has been decided as part of a completed due process hearing may not thereafter be the subject of a CRP. 34 C.F.R. § 300.661(c); 8 N.Y.C.R.R. § 200.5(k)(2)(vii)(viii).

### C. *Attorneys' Fees*

If a parent or guardian of a child successfully enforces a child's rights in any "action or proceeding" brought pursuant to the IDEA, the court may award a reasonable attorneys' fee as part of the costs of the action. 20 U.S.C. § 1415(i)(3)(B). To qualify for an award of fees, the party enforcing the child's rights must be a "prevailing party" within the meaning of the IDEA. 20 U.S.C. § 1415(i)(3)(B). Thus, attorneys' fees are to be awarded under the IDEA only if fees are sought in connection with an IDEA "action or proceeding" and if the party is one who has "prevailed" within the meaning of the statute.

### D. *Exhaustion Requirement*

Prior to commencing a state or federal court action seeking relief available under the IDEA, the aggrieved party must first exhaust available administrative remedies. 20 U.S.C. § 1415(*l*). This exhaustion requirement applies in all cases where

a plaintiff alleges statutory or constitutional claims in addition to an IDEA claim, including those cases seeking relief (such as money damages) that is unavailable under the IDEA. *Polera v. Bd. of Educ., of the Newburgh Enlarged City School District,* 288 F.3d 478, 488 (2d Cir.2002). Even if a plaintiff alleges claims solely pursuant to provisions other than the IDEA, administrative remedies must be first pursued if the claim is one that seeks relief for an alleged failure to provide appropriate educational services. *Polera* 288 F.3d at 488–89; *Sabur v. Brosnan,* 203 F.Supp.2d 292, 298 (E.D.N.Y.2002) (exhaustion requirement applies to Section 1983 claims seeking relief available under the IDEA); *see* 20 U.S.C. § 1415(*l*). The failure to exhaust administrative remedies deprives a court of subject matter jurisdiction. *Polera,* 288 F.3d at 482–83.

■ Despite the broad nature of the exhaustion requirement, courts recognize a "futility" exception whereby resort to administrative remedies may be excused. Recently, however, the Second Circuit has cautioned against expansive interpretation of the futility exception and has refused to apply this exception in cases where the administrative process, if invoked, could have provided relief. *See Polera,* 288 F.3d at 488–89. Thus, the Second Circuit has stated that "sweeping exceptions to the exhaustion requirement" is "at odds" with belief that administrative agencies are in the optimal position to identify and correct errors and to "fine tune the design of their programs." *Id.* at 489. A plaintiff alleging a futility exception to the exhaustion requirement bears the burden of showing that the exception applies. *Sabur v. Brosnan,* 203 F.Supp.2d 292, 299 (E.D.N.Y. 2002).

The foregoing demonstrates the policy that underlies the exhaustion doctrine and limitations on the futility exception. That policy recognizes that: (1) an agency with expertise in a relevant area should be allowed to develop the record and sharpen the issues and, (2) state or local education agencies should be given the opportunity to identify errors and correct those errors without judicial intervention. *Connors v. Mills,* 34 F.Supp.2d 795, 801. Put simply, any argument that could be raised in an administrative setting, should be raised in that setting. Such arguments include, by way of example, alleged procedural violations by the local school district and the alleged bias of a hearing officer. *See Sabur,* 203 F.Supp.2d at 301.

Despite the narrow interpretation of the futility exception, there are scenarios where exhaustion is excused. Where pure questions of IDEA law are at issue, for example, compelling exhaustion would not further the policies underlying exhaustion. In such cases, factual development of the record may be less important than analysis of the statute and relevant case law. *See, e.g., Connors,* 34 F.Supp.2d at 800.

### III. Disposition of Defendants' Motion

#### A. Attorneys' Fees

■ Plaintiffs' claim for an award of attorneys' fees stems from their claimed status as prevailing parties in the context of the CRP. Attorneys' fees are available only if Plaintiffs pass two hurdles. First, it must be shown that the CRP is an IDEA "proceeding." Second, the relief obtained must be sufficient to conclude that Plaintiffs are "prevailing parties." Such issues are pure questions of law that are not subject to agency expertise. Indeed, these issues have been the subject of recent conflicting case law. The purely legal nature of these questions makes it appropriate to excuse the attorneys' fee issue from prior administrative review. Accordingly, the court finds it appropriate to address these legal questions without

requiring administrative review beyond the local school district's refusal to pay.

### i. *"Action or Proceeding"*

■ Plaintiffs here seek attorneys' fees in connection with time spent by counsel during the CRP. In view of the fact that IDEA attorneys' fees are available only in connection with an IDEA action or proceeding, the question to be resolved is whether the CRP falls into either category.

The proper characterization of the CRP, for attorneys' fees purposes, is an issue that has yet to be decided by the Second Circuit or any district court within the circuit.[2] While the Ninth Circuit Court of Appeals has held that a state CRP constitutes an IDEA action or proceeding, *see Lucht v. Molalla River Sch. District*, 225 F.3d 1023 (9th Cir.2000), two separate district courts judges outside of that circuit have held otherwise, *see Johnson v. Fridley Public Schools*, 2002 WL 334403 (D.Minn. February 21, 2002); *Megan C. v. Independent Sch. Dist. No. 625*, 57 F.Supp.2d 776 (D.Minn.1999).

For the reasons set forth below, the court agrees with the latter-cited cases and holds that the state CRP constitutes neither an action nor a proceeding under the IDEA. Accordingly, attorneys' fees incurred in connection with participation in a CRP may not be awarded. This court's decision refusing to characterize a state CRP as an IDEA action or proceeding is supported by the following factors.

First, Section 1415(i)(3)(B), the IDEA attorneys' fees provision, states that fees are available in any action or proceeding "under this section." There is no doubt that the words "under this section" refer to the entire IDEA. Clearly, an action commenced in federal or state court is an IDEA "action." To determine the scope of the term IDEA "proceeding," the court must examine Section 1415 of the IDEA as a whole. Upon such examination, it becomes clear that an IDEA "proceeding" is limited to those proceedings that appear expressly in the statute. Those proceedings are identified by reading sections 1415(a), 1415(b) and 1415(f) together.

Section 1415 is entitled "procedural safeguards." Section 1415(a) refers to "establishment of procedures" and states that state or local educational agencies receiving federal financial assistance are required to establish IDEA procedures to ensure that children and parents are "guaranteed procedural safeguards" with respect to the provision of a free, appropriate public education. 20 U.S.C. § 1415(a). Subsection (b) of Section 1415, entitled "types of procedures," states that the "procedures required by [the IDEA] shall include" "an opportunity to present complaints" regarding a student's education. 20 U.S.C. § 1415(b)(6). It is clear, therefore, that any "opportunity to present" an IDEA complaint, qualifies as an IDEA procedure. The question, however, is whether, when a complaint is presented by way of a CRP, that presentation is an IDEA proceeding.

The "opportunity to present complaints" set forth in Section 1415(b)(6) is expressly cross-referenced in section 1415(f)—the due process hearing procedures section. Specifically, Section 1415(f) states that "whenever a complaint has been received under subsection 1415(b)(6)," that complaint is to be heard in the context of a due process hearing, with the full panoply of rights guaranteed in that section. 20

---

**2.** A case decided by a district court in Vermont, *Upper Valley Assoc. for Handicapped Citizens v. Blue Mountain Union Sch. Dist. No. 21*, 973 F.Supp. 429 (D.Vt.1997), dealt with the issue that is presently before the court. This case, however, was decided under a predecessor statute.

U.S.C. § 1415(f). Nowhere in Section 1415(f), or for that matter, anywhere in the IDEA, is there a reference to the CRP. It is reasonable to assume, then, from the plain language of the IDEA, that the proceedings referred to in the attorneys' fee provision include only actions and proceedings referred to in the statute, *i.e.*, civil actions and due process hearings.[3] Because the CRP appears nowhere in the statute, it is not covered by the statutory grant of attorneys' fees. *Accord Megan C.*, 57 F.Supp.2d at 783.

Notably, when at least one court held that the CRP constituted an IDEA procedure, Section 1416(b) read differently. *See Upper Valley Assoc. for Handicapped Citizens v. Blue Mountain Union Sch. Dist. No. 21*, 973 F.Supp. 429, 435 (D.Vt.1997). When *Upper Valley* was decided, Section 1415(b)(6) stated that the procedures required by the IDEA "include *but shall not be limited to*" the procedures enumerated in that section. Today, and when *Megan C.* and *Johnson* were decided, amended Section 1415(b)(6) states that the procedures required by the IDEA "*shall include*" only the procedures referred the section—the "but shall not be limited to" language was removed. *See Megan C.*, 57 F.Supp.2d at 784. Thus, while it may have been reasonable for the court in *Upper Valley* to conclude, by virtue of the "but not limited to" language, that a proceeding under Section 1415(b) could include proceedings outside of the IDEA, it is now certainly less reasonable to make that assumption.

The regulations promulgated pursuant to the IDEA lend further support to the argument that IDEA attorneys' fees are not available for time spent in a CRP. Specifically, the regulations implementing the due process procedure include a specific section providing for the recovery of attorney's fees. *See* 34 C.F.R. § 300.515. In contrast, the regulations implementing state CRP's contain no such provision. *See* 34 C.F.R. § 300.660–300.662. If the CRP was an action or proceeding that could result in an award of attorneys' fees, the implementing regulations for the CRP would have contained an attorneys' fee provision similar to that found in the due process regulations. They do not.

Finally, policy considerations militate against a finding that attorneys' fees are available to a party who prevails in a CRP. Because the procedures required in the context of a due process hearing are not necessary in a CRP, the CRP is a less formal and less adversarial process. Indeed, it has been noted that the CRP is intended to be a "free service" whereby parents can have complaints heard without incurring fees associated with a costly legal action. *Megan C.* 57 F.Supp.2d at 791, citing 57 FR 44794 (1992) (describing CRP as an informal process in comparison with the formal process associated with a due process hearing). It would make little sense, therefore, to allow recovery of attorneys' fees in connection with the informal CRP.

For the reasons set forth above, and in light of the fact that an award of attorneys' fees requires "explicit" statutory authority, *Key Tronic Corp. v. United States*, 511 U.S. 809, 819, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994), citing, *Alyeska Pipeline Serv. Co. v, Wilderness Society*, 421 U.S. 240, 262, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the court, finding such authority lacking, holds that the IDEA does not provide for recovery of attorneys' fees incurred in connection with time spent in a CRP.

---

**3.** Also included as an IDEA "procedure" is the procedure found in Section 1415(k). This procedure, which refers to placement in alternative educational settings, is not relevant here.

## ii. *Prevailing Party*

The court's conclusion that the CRP is not an IDEA proceeding disposes of the attorneys' fees issue and makes it unnecessary to consider whether or not Plaintiffs were "prevailing parties" within the definition recently set forth by the Supreme Court in *Buckhannon Board and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). There, the Court held that prevailing party status was achieved only if the party seeking fees obtained a court-ordered change in the parties' legal relationship. Such a change was said to occur either by obtaining a judgment on the merits or a judicially enforceable consent decree. *Id.* at 604, 121 S.Ct. 1835. A voluntary change in a defendant's conduct, unaccompanied by an order of a court, was held to lack the "judicial imprimatur" necessary to confer prevailing party status. *Id.* at 605, 121 S.Ct. 1835.

It is far from clear whether a decision of a State Education Department has the "judicial imprimatur" necessary to confer prevailing party status. In light of the fact that the CRP is not an IDEA proceeding, however, it is not necessary to decide this issue at this time. Thus, the court expresses no opinion regarding Plaintiffs' prevailing party status.

### B. *Remaining Claims*

Having disposed of the claim for attorneys fees, the court turns to the remainder of the complaint—claims pursuant to the IDEA, the Rehabilitation Act and Section 1983. Each claim is discussed below.

### i. *IDEA and Rehabilitation Act*

The IDEA and Rehabilitation Act claims are premised upon the same factual scenario, *i.e.,* that the District failed to provide Robert with an appropriate education and failed to make necessary accommodations. Defendants argue that dismissal of these claims is necessary because Plaintiffs have failed to exhaust their administrative remedies. The court agrees.

■ Jurisdiction over this action can exist only if Plaintiffs have first exhausted their administrative remedies. Here, Plaintiffs participated in a CRP and prevailed on certain issues in the context of that proceeding. The decision of the SED in the CRP, however, did not dispose of all of Plaintiffs' claims. Importantly, the SED decision expressed no opinion on the ultimate issue of whether placement in the Arts Program was appropriate for Robert. Instead, it was noted that this issue must await development of a new IEP that addresses the issues set forth in the October 17 Decision.

Despite the non-final nature of the October 17 Decision, Plaintiffs characterize that the decision of the SED as a final decision and argue that there is nothing left to be decided at the administrative level. In essence, Plaintiffs argue that there is nothing left for the District to do but implement the October 17 Decision. The scenario set forth by Plaintiffs here is similar to one alleged frequently by plaintiffs seeking to avoid an exhaustion argument.

Specifically, plaintiffs will argue that further administrative action is not required because their lawsuit raises only the issue of "implementation" of an IEP. In such cases, plaintiffs argue that the administrative process has resulted in formulation of an IEP that is acceptable to the parents but that the school has unlawfully refused to implement that plan. If this is an accurate description of the case, a court might agree that further administrative action is not necessary.

Where, however, the IEP relied upon is stated in broad terms, the issue is not merely one of implementation but also of

interpretation. In such cases, courts hold that the futility exception does not apply and the plaintiff must pursue further administrative remedies prior to instituting an action. *See Polera* 288 F.3d at 489.

Here, as in *Polera,* the decision alleged to involved implementation only speaks in generalities—it says nothing about any particular placement for Robert. It merely requires that the District address certain areas (such as identifying strengths and weaknesses) before moving forward with a new IEP for Robert. Such a decision is far from one involving implementation only. On the contrary, the decision specifically contemplates further action at the local level.

■ Even Plaintiffs' complaint belies the argument that "implementation" of the October 17 Decision is all that remains. It is clear that Plaintiffs continue to request a specific placement for Robert. No decision regarding that placement has been made. The parties are still very much at odds with respect to the proper placement for Robert.[4] Under these circumstances, the issue is more one of interpretation and less of implementation. Such cases require further administrative action prior to judicial review. Thus, it cannot be said that there is nothing more to be done at the administrative level.

Finally, it has come to the attention of the court that Plaintiffs have requested and taken part in a due process hearing. The participation in this procedure makes it particularly inappropriate to entertain a civil action at this time. The administrative procedure is going forward. Those with greater expertise in the area of education than this court must be allowed to complete their assessment of what is appropriate for Robert. Accordingly, the court dismisses the claims pursuant to the IDEA and the Rehabilitation Act for failure to exhaust administrative remedies.

### iii. *Retaliation Claims: Section 504 and Section 1983*

■ Plaintiffs' remaining claims pursuant to Section 1983 and Section 504 are premised on the argument that Robert was re-classified in retaliation for his parents' exercise of their statutory and First Amendment rights. In light of the disposition of the remainder of Plaintiffs' claims, and the fact that the administrative process may yield a different classification for Robert, the court will dismiss the retaliation claims at this time. At the conclusion of the administrative proceedings herein, Plaintiffs shall have the right to re-open this matter and litigate these and any other claims that are properly before the court.

### IV. *Plaintiffs' Motion to Amend the Complaint*

Because the court is dismissing Plaintiffs' complaint at this time, it is unnecessary to pass upon the motion to amend the complaint. If, upon the conclusion of administrative proceedings, this action is re-opened, the Magistrate Judge assigned to this case can consider the propriety of amending the complaint.

### CONCLUSION

Defendants' motion to dismiss Plaintiffs' claim for attorneys' fees is granted. The motion to dismiss the claims pursuant to the IDEA and the Rehabilitation Act are dismissed for failure to exhaust administrative remedies. The remainder of the complaint is dismissed with the right to re-

---

4. The court notes that Robert is about to reach age eighteen. While Defendants argue that his claims are about to become moot, Plaintiffs note that even after the age of eigh- teen, Robert will still have a claim for compensatory education. The court declines, therefore, to dismiss this case on the ground of mootness.

open upon the completion of administrative proceedings. Plaintiffs' motion to amend the complaint is denied at this time with the right to renew if the case is re-opened.

The Clerk of the Court is directed to terminate all motions in this matter and to close this case.

SO ORDERED